**GRAHAM MORTGAGE CORPORATION,**
Appellant

v.

**Michael H. HALL and Emajean Hall, Trustee, Appellees.**

**No. 05–08–01665–CV.**

Court of Appeals of Texas, Dallas.

Feb. 11, 2010.

Christopher John Scanlan, Carrington, Coleman, Sloman & Blumenthal LLP, Dallas, for appellant.

Collin D. Kennedy, Hastings Lyle Hanshaw, Hanshaw Kennedy, LLP, Frisco, Jeffrey M. Travis, Travis & Calhoun, P.C., Dallas, for appellees.

Before Chief Justice WRIGHT and Justices RICHTER and FILLMORE.

## OPINION

Opinion by Justice FILLMORE.

Appellant Graham Mortgage Corporation ("Graham") filed a motion for rehear-

ing. We overrule the motion for rehearing. On our own motion, we withdraw our opinion issued November 30, 2009 and vacate our judgment of that date. The following is now the opinion of the Court.

The trial court granted a temporary injunction restraining Graham from foreclosing on a tract of land secured by two deeds of trust. Because we conclude the trial court did not err in granting the temporary injunction, we affirm the trial court's order.

## BACKGROUND

In 2003, appellee Michael Hall entered into an agreement with Douglas Properties, Inc. and James R. Douglas, Jr.[1] to form a limited partnership known as Douglas/Hall, Ltd. ("DHL"). The parties agreed that Douglas Properties, Inc. would be the general partner, owning a one percent interest, and Hall and Douglas would be limited partners, owning 50 and 49 percent interests, respectively. The purpose of the partnership was to "acquire, own, operate, manage, and develop" a 320–acre tract of land in Collin County, Texas (the "Hall Tract"), owned by appellee Emajean Hall, Trustee ("Emajean Hall").[2] The partnership agreement contained provisions regarding a "development loan" to be obtained by the general partner "for the purpose of funding a portion of the cost of acquisition and development" of the Hall Tract. The agreement also contained provisions regarding the general partner's obligation to develop the Hall Tract. In connection with its purchase of the Hall Tract from Emajean Hall in June 2003, DHL signed a promissory note in the amount of $9,090,335.27 payable to Emaje-

an Hall. In addition, DHL signed a promissory note in the amount of $1.5 million payable to Graham. The Hall Tract was conveyed as security for each of these notes under two deeds of trust.

In 2005, DHL borrowed $3,074,000 from Graham. Graham designated this loan as "S755." DHL used a portion of the proceeds of this loan to pay the balance due on the $1.5 million promissory note payable to Graham. As part of this transaction, Emajean Hall signed a subordination of her lien, providing that her lien would become "second, subordinate, and inferior" to a 2005 deed of trust lien signed by DHL to secure payment of the S755 promissory note. At the same time, Douglas Properties/Development, Inc. ("DPDI"),[3] a corporation of which Douglas was President, borrowed $3.2 million from Graham (the "DPDI loan"). The S755 loan agreement between DHL and Graham referenced the DPDI loan in a paragraph entitled "Cross–Default Loan." In this paragraph, DHL agreed that a default in the DPDI loan "shall trigger and be considered a default" of DHL's S755 loan. The DPDI loan was secured by a deed of trust conveying approximately 116 acres of land adjacent to the Hall Tract, known as the Bolin Tract.

In November 2006, DHL borrowed another $3.5 million from Graham. Graham designated this loan as "S755A." This loan was secured by a second deed of trust lien in favor of Graham on the Hall Tract. Emajean Hall again subordinated her lien. Michael Hall signed a "Consent of Partners" authorizing Douglas Properties, Inc. as general partner of DHL to undertake actions to complete the loan transaction.

---

1. Although not parties to this appeal, Douglas Properties, Inc. and James R. Douglas, Jr. are defendants in the trial court proceedings.

2. Emajean Hall is Michael Hall's mother.

3. Douglas Properties/Development, Inc. is a defendant in the trial court proceedings, but not a party to this appeal.

The agreements between DHL and Graham for both the S755 and S755A loans included a provision regarding advances from the loan proceeds. In a paragraph entitled "Future Advances," both agreements provided that advancements could be made to DHL "for the sole purpose of paying the costs (including the payment of accrued interest under the Note) reasonably and necessarily incurred by Borrower in connection with the ownership, operation and development of the Property into single-family residential lots, a minimum of one acre each." The "Property" referred to in this provision was the Hall Tract.

In 2007, Douglas on behalf of the general partner of DHL and as President of DPDI signed modifications of the deeds of trust relating to the 2005 loans by Graham to DHL and DPDI and the 2006 loan by Graham to DHL. These modifications were also signed by the President of Graham. The effect of these agreements was to remove the restriction on the use of loan proceeds and to allow DPDI to borrow additional money from Graham. Graham agreed to these modifications "on the condition that Borrower [DHL] agree to cross-collateralize the Deed of Trust [relating to the S755 loan] to the $3.2M Loan [the 2005 DPDI loan] and the $586K Loan [a new loan to DPDI] and to provide for the cross-default of the payment and performance of the $586K Note to the Note [the S755 loan]." As noted above, in 2005, the S755 loan agreement provided that a default under the deed of trust for the DPDI loan would also "trigger and be considered a default" of the S755 loan documents, but the 2005 deed of trust relating to the S755 loan did not contain a parallel provision. The 2007 modifications inserted specific provisions into the S755 deed of trust to provide that the Hall Tract was also security for the new $586K loan to DPDI and an additional advance to be made under the 2005 DPDI loan. Similar modifications were made to the deed of trust relating to the 2006 S755A loan. The record does not include a consent by the partners of DHL to these 2007 modifications.

In 2008, appellees filed this lawsuit against Douglas, Barbara Douglas, Douglas Properties, Inc., DHL, DPDI (the "Douglas defendants"), Graham, and others alleging fraud and other claims. Specifically, appellees alleged claims against Graham for statutory fraud in a real estate transaction, common law fraud, conspiracy to defraud, and for participating in a breach of fiduciary duty by the Douglas defendants. Appellees also sought judicial foreclosure of the $9 million promissory note payable by DHL to Emajean Hall and the deed of trust securing that note. Graham then initiated foreclosure proceedings under the deeds of trust securing the S755 and S755A loans, and appellees filed their application for a temporary injunction against foreclosure pending trial on the merits.

At the hearing on the application for temporary injunction, both Douglas and Michael Hall testified. Douglas admitted no development had occurred on the Hall Tract, and also admitted the Hall Tract became cross-collateralized and cross-defaulted in 2007 for third-party loans relating to the Bolin Tract. After Douglas's testimony, the trial judge noted it was "particularly concerning" that Douglas answered all of the questions from Graham's attorney, but did not know or did not remember the answers to questions posed by the attorney for appellees. Michael Hall testified he believed loan S755A was made to pay the balance due under loan S755, not to incur additional indebtedness. Hall also testified he had difficulty obtaining information about DHL's indebtedness from both Douglas and Graham. He testified Douglas did not "discuss with [him]

that he was going to sign agreements which would ... cross-default and cross-collateralize the Hall tract for loans owed by other parties." Hall did admit that a portion of the proceeds of the loans had been paid to him and to Emajean Hall.

The record also includes over forty exhibits that the parties agreed could be admitted into evidence. These exhibits include the limited partnership agreement; the original deed of trust securing the promissory note to Emajean Hall; documents relating to the 2005 and 2006 loans, including the subordination agreements signed by Emajean Hall; documents concerning the 2007 modifications of the deeds of trust relating to the 2005 loans by Graham to DHL and DPDI; and documents relating to funds spent by the partnership, including copies of checks written on the partnership account.

After the hearing, the trial judge granted the application for temporary injunction. In his letter communicating his decision, he noted, "Contrary to the loan agreements, GMC [Graham] loaned over seven and one-half million dollars on property that was still nothing but dirt." The trial judge also noted he "relied on evidence of a long relationship between GMC and Douglas and evidence that part of the proceeds of these loans went toward payments on third party loans between GMC and Douglas." On the other hand, the trial judge also stated:

> The Court is struggling with the concept of foreclosure causing harm to Hall. Hall decided to enter into this agreement with the idea of selling this land for cash. No one has suggested that GMC is insolvent. If GMC has liability to Hall, can Hall be made whole with a money judgment against GMC?

In the order granting the temporary injunction, however, the court expressly found "a probable injury ... which would be both irreparable and for which there is no adequate remedy at law." The court described this injury as "relating to, among other things, fraud in a real estate transaction which would include, but is not limited to, the validity and priority of liens filed of record to secure notes owed to one of the Plaintiffs and to Graham Mortgage Corporation in respect to the subject property." The court also noted that a foreclosure would alter the status quo; there would be "a loss of title to the subject tract"; and "the value of the said tract and liens relating to the promissory note given to ... [Emajean Hall] ... would be extinguished and the owner thereof would lose its title thereto," resulting in irreparable injury. Graham appeals, alleging the trial court abused its discretion in granting the application for temporary injunction.

## Standard of Review

The decision to grant or deny a temporary injunction lies within the sound discretion of the trial court. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex.1993)). "At a hearing upon the request for a temporary injunction the only question before the trial court is whether the applicant is entitled to preservation of the status quo of the subject matter of the suit pending trial on the merits." *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978). To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204. The applicant is not required to establish that he will prevail upon final trial. *Walling*, 863 S.W.2d at 58. Because an injunction is an equitable remedy, a trial court weighs the respective conveniences

and hardships of the parties and balances the equities. *Computek Computer & Office Supplies, Inc. v. Walton,* 156 S.W.3d 217, 220 (Tex.App.-Dallas 2005, no pet.); *see also* Tex.R. Civ. P. 693 (principles of equity shall govern proceedings in injunctions when the same are not in conflict with rules or statutes).

 The granting of a temporary injunction as well as its scope is largely and peculiarly within the broad discretion of the trial court. *Elec. Data Sys. Corp. v. Powell,* 508 S.W.2d 137, 139 (Tex.Civ.App.-Dallas 1974, no writ). We may not substitute our judgment for that of the trial court and determine the trial court abused its discretion by granting injunctive relief unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru,* 84 S.W.3d at 204. We view the evidence in the light most favorable to the trial court's order and indulge every reasonable inference in its favor. *Dass, Inc. v. Smith,* 206 S.W.3d 197, 202 (Tex.App.-Dallas 2006, no pet.); *Tri–Star Petroleum Co. v. Tipperary Oil & Gas Corp.,* 101 S.W.3d 583, 587 (Tex. App.-El Paso 2003, pet. denied). The trial court does not abuse its discretion if the applicant pleads a cause of action and presents some evidence tending to sustain that action or where the trial court bases its decisions on conflicting evidence. *Davis,* 571 S.W.2d at 862 (citing *Zmotony v. Phillips,* 529 S.W.2d 760, 762 (Tex. 1975)); *Sharma v. Vinmar Int'l, Ltd.,* 231 S.W.3d 405, 419 (Tex.App.-Houston [14th Dist.] 2007, no pet.). If some evidence reasonably supports the trial court's decision, the trial court does not abuse its discretion. *Butnaru,* 84 S.W.3d at 211 (citing *Davis,* 571 S.W.2d at 862).

## ANALYSIS

### A. Temporary injunction

 In its first issue, Graham contends the trial court abused its discretion in granting appellees' application for temporary injunction because appellees did not demonstrate a probable right to recover on at least one of their claims as to each loan and deed of trust. In its second issue, Graham contends the trial court abused its discretion in granting appellees' application for temporary injunction because appellees have no possessory interest in the property and therefore cannot establish a probable irreparable injury for which there is no adequate remedy at law. Graham argues we should consider each plaintiff separately and each loan separately to determine whether the trial court abused its discretion in granting injunctive relief. The trial court did not separately evaluate each claim, but instead considered the issues of plaintiffs' probable right to recover and probable irreparable injury together, concluding:

> [T]he Court finds that evidence before the Court in support of Plaintiffs' Application for Temporary Injunction establishes that Plaintiffs have a probable right to recover on those claims plead and a probable injury resulting thereby which would be both irreparable and for which there is no adequate remedy at law relating to, among other things, fraud in a real estate transaction which would include, but is not limited to, the validity and priority of liens filed of record to secure notes owed to one of the Plaintiffs and to Graham Mortgage Corporation in respect to the subject property. The Plaintiffs have shown that but for the issuance of a temporary injunction pending a trial on the merits whereat those matters in dispute could be fully heard Graham Mortgage Corporation will foreclose on one or both of the deeds of trust securing notes it holds, ... and that as a result of any foreclosure sale which might be complet-

ed thereby the current status quo would be altered and there would be a loss of title to the subject tract, the value of the said tract and liens relating to the promissory note given to Emajean Haggard Hall, trustee … would be extinguished and the owner thereof would lose its title thereto resulting in an irreparable injury and an injury for which there is no adequate remedy at law.

We first conclude the trial court did not abuse its discretion by considering Michael Hall's and Emajean Hall's claims and alleged injuries together in determining a probable right to recover and probable irreparable injury. As discussed in more detail below, the record reflects a complex series of transactions undertaken by Douglas which the Halls allege were the product of fraud. The same facts are relevant to the claims of both Michael and Emajean Hall. Foreclosure on the single piece of real property at issue would, as the trial court noted, alter the status quo. The trial court's decision to maintain the status quo until the facts can be fully developed and the merits of the Halls' claims can be fully adjudicated was well within the bounds of reasonable discretion. *See Butnaru*, 84 S.W.3d at 204.

 We next conclude the Halls established a probable right to recover on their claim against Graham for participating in breaches of fiduciary duty by the Douglas defendants.[4] As general partner of a limited partnership, Douglas Properties, Inc. owed a fiduciary duty to the limited partners, including Michael Hall. *See Brazosport Bank of Texas v. Oak Park Townhouses*, 889 S.W.2d 676, 683 (Tex.App.-Houston [14th Dist.] 1994, writ

denied) (relationship between general partner and limited partners in a limited partnership is fiduciary in nature). The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship must exist between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant. *OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P.*, 234 S.W.3d 726, 743 (Tex.App.-Dallas 2007, pet. denied) (citing *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.-Dallas 2006, pet. denied)).

 Appellees do not allege Graham owes them a fiduciary duty. However, they do allege that Graham knowingly participated in Douglas's breach of fiduciary duty. "When a third party knowingly participates in the breach of fiduciary duty, the third party becomes a joint tortfeasor and is liable as such." *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex.App.-Dallas 2007, no pet.). As we explained in *Kastner*, "a cause of action premised on a contribution to a breach of fiduciary duty must involve the knowing participation in such a breach." *Id.*

There was some evidence offered at the hearing that Douglas Properties, Inc. and Douglas breached a fiduciary duty to Michael Hall by using the Hall Tract owned by DHL to secure debts of other Douglas entities. The trial court concluded that contrary to the loan agreements between Graham and DHL, the proceeds of the loans to DHL were not used to develop the Hall Tract, and "part of the proceeds of

---

4. The Halls have asserted claims against Graham for statutory fraud in a real estate transaction, common-law fraud, conspiracy to defraud, and participating in the breach of fiduciary duties of the Douglas defendants. Because we conclude the Halls established a probable right to recover on their claim against Graham for participating in breaches of fiduciary duty by the Douglas defendants, we express no opinion on the Halls' remaining claims against Graham.

these loans went toward payments on third party loans between [Graham] and Douglas." The evidence to support this conclusion included the loan documents themselves, copies of checks drawn on DHL's bank account, evidence regarding the use of loan proceeds, and Douglas's testimony.

The evidence also supports the conclusion that Graham had knowledge of the terms of the sale of the Hall Tract to DHL and subsequent loans by Graham to DHL and other Douglas entities. In every transaction complained of by the Halls, Graham loaned money to Douglas or an entity in which Douglas was a principal. With regard to the 2007 modifications of the deeds of trust relating to the 2005 loans by Graham to DHL and DPDI and the 2006 loan from Graham to DHL, the documents indicate that Graham required the cross-collateralization and cross-default provisions. In the "First Modification, Extension and Renewal of Deed of Trust Note and Deed of Trust" dated July 12, 2007, between DHL and Graham, the parties agreed to amend the deed of trust so that the Hall Tract also secured the two loans made by Graham to DPDI. The modification recites,

> Whereas, *Holder [Graham] has agreed to make the Advance* [defined as the remaining unadvanced portion of the $3.2 million loan to DPDI] and the $586K Loan *on the condition that Borrower [DHL] agree to cross-collateralize* the Deed of Trust to the $3.2M Loan and the $586K Loan *and to provide for the cross-default* of the payment and performance of the $3.2M Note and the $586K Note to the Note. . . .

(Emphasis added). Graham's knowledge of the terms of these transactions supports the conclusion that Graham knowingly participated in the Douglas defendants' breach of fiduciary duty.

Graham counters that the DHL partnership agreement expressly provided Graham had the legal right to disburse loan funds "without policing the general partner's use of the funds." Graham cites to section 8.1 of the agreement, which provides in part,

> Without limitation, no person or party to which a Partnership loan application is made shall be required to inquire into the purposes for which such a loan is sought, and as between the Partnership and such person or party, it shall be conclusively presumed that the proceeds of such loan are to be and will be used solely for purposes authorized under this Agreement.

Appellees' claims, however, are not limited to the use of the loan proceeds, but also arise out of the use of the Hall Tract as security for loans to other Douglas entities. Even if Graham was not responsible for "policing" Douglas's use of the loan proceeds, the use of partnership property as security for third-party loans, contrary to the partnership agreement, would have been apparent to Graham as party to the transactions in question. Graham itself contends Michael Hall signed the partnership agreement knowing Graham would be aware of the terms of the document and would rely on them.

Graham also points to the Consent of Partners signed by Michael Hall on November 22, 2006, as part of the $3.5 million loan transaction, which provided that the DHL general partner was authorized "to do and perform all acts and things that may be deemed necessary and proper, in the sole discretion of the General Partner . . . and its taking of any such action . . . shall be conclusive evidence that the same was necessary and desirable and in the best interest of the Partnership." Graham argues it "had the legal right to disburse loan proceeds to DHL without monitoring

or questioning DHL's use of the proceeds." The authority given by the consent, however, is not unlimited. The same paragraph provides the general partner's authority is for "the negotiation and consummation of such Loan and any renewal, extension, modification or revisions thereof," and does not address disbursement of loan proceeds. Again, Graham contends Michael Hall signed the consent knowing Graham would be aware of its terms and rely on them. Also, as noted above, the alleged wrongful use of the loan proceeds is only a part of appellees' breach of fiduciary duty claim. Nothing in the consent of partners gave the general partner authority to pledge partnership property in a manner contrary to the partnership agreement.

Graham's arguments are premised on the assumption that only the S755 and S755A loans are relevant to the inquiry whether the trial court abused its discretion in granting the temporary injunction, as these are the loans on which Graham is attempting to foreclose. Graham argues Hall was not a party to the loan agreements and cannot rely on their provisions, including the restriction that advances under the loans shall be for the sole purpose of paying costs relating to the development of the Hall Tract into single-family residential lots. Graham argues these provisions were for Graham's benefit and could be waived by Graham unilaterally. Graham also argues Hall has not established he is a third-party beneficiary to the loan agreements or that he relied on the agreements in any way. Appellees' claims for breach of fiduciary duty, however, are broader than allegations of wrongful disbursement of loan proceeds. Their petition alleges Graham knowingly participated in a breach of fiduciary duty that included "using and misusing DHL" for personal benefit, in addition to paying monies from the DHL account for obligations that

were not DHL's. The evidence appellees presented at the hearing was not limited to the S755 and S755A loans, but also included evidence of other transactions between Graham and Douglas that allegedly arose out of Douglas's misuse of DHL.

Graham also complains the injunction is not limited to foreclosure on the S755A loan even though appellees' evidence "focused almost exclusively on the use of proceeds from only the S755A Loan." Without citing authority, Graham argues appellees "were required to present evidence establishing a probable right to recover on at least one claim with regard to *each loan.*" (Emphasis in original). We disagree that appellees' allegations and evidence were limited to the use of the proceeds from the S755A loan, as discussed above. Moreover, Emajean Hall subordinated her lien in both the S755A and the S755 transactions. In any event, where a probable right to recovery has been shown with respect to one loan, the status quo could not be maintained by permitting foreclosure on the property that secures it.

█ We next conclude the Halls established a probable irreparable injury from Graham's planned foreclosure of its liens on the property. As Graham concedes, suits involving real property usually meet the irreparable injury standard because each piece of real estate is considered to be unique. *See El Paso Dev. Co. v. Berryman,* 729 S.W.2d 883, 888 (Tex.App.-Corpus Christi 1987, no writ). Here, however, Graham argues Emajean Hall sold the property, no longer has any claim to title, and has no equity interest to protect. Graham also argues Michael Hall has never held title to the Hall Tract; he is "merely a limited partner in a partnership," and any loss he has suffered may be compensated in damages. There is authority supporting Graham's argument

that where an applicant for equitable relief from foreclosure is not an owner of land, a right of action for damages exists and there is an adequate remedy at law. *See, e.g., Doerwald v. MBank Fort Worth, N.A.*, 740 S.W.2d 86, 90–91 (Tex.App.-Fort Worth 1987, no writ) (ample evidence to support trial court's finding that applicant failed to prove irreparable injury or inadequate remedy at law from foreclosure where applicant did not own equity interest in property). Here, however, the analysis is complicated by Emajean Hall's interests. As the trial court noted, there are issues to be resolved at trial regarding Emajean Hall's lien on the property. DHL's promissory note to Emajean Hall for the purchase price of the Hall Tract was secured by a deed of trust. Emajean Hall subordinated this lien on the property twice, in connection with the S755 and S755A loans on which Graham now seeks to foreclose. Both subordinations recited that "Graham Mortgage Corporation requires that the Subordinated Lien [Emajean Hall's lien] be subordinated to the Superior Lien [Graham's lien] and Payee has agreed to so subordinate the Subordinated Lien." In appellees' petition, Emajean Hall pleaded that these subordinations "were secured by fraud and hence invalid." The record reflects Emajean Hall's information concerning the subordination of the lien came through Michael Hall. Her claim about the invalidity of the subordination of her lien is thus premised on representations allegedly made to, and information allegedly withheld from, Michael Hall, and arises out of the same facts as Michael Hall's claims.

It is a "well-established rule" that "following the valid foreclosure of a senior lien, junior liens, if not satisfied from the proceeds of the sale, are extinguished." *Mays v. Bank One, N.A.*, 150 S.W.3d 897, 900 (Tex.App.-Dallas 2004, no pet.). The injunction order reflects the trial court

considered this rule in concluding a probable injury had been shown "for which there is no adequate remedy at law relating to, among other things, fraud in a real estate transaction which would include, but is not limited to, the validity and priority of liens filed of record to secure notes owed to one of the Plaintiffs and to Graham Mortgage Corporation in respect to the subject property." While it is also well-established that "the right of the first-lien holder to foreclose is not affected by the objections of the second-lien holder," *Allied Bank of Texas v. Preissman*, 532 S.W.2d 699, 701 (Tex.Civ.App.-San Antonio 1976, writ ref'd n.r.e.), here, where there is a dispute to be resolved at trial relating to the priority of the liens, and issues regarding Graham's knowledge of and participation in Douglas's alleged breaches of fiduciary duty, it was not an abuse of discretion for the trial court to maintain the status quo between the parties. *See Davis*, 571 S.W.2d at 862 (only question before trial court at temporary injunction hearing is whether applicant is entitled to preservation of status quo of subject matter of suit pending trial on merits), *compare Allied Bank*, 532 S.W.2d at 701 ("there is no pleading or even contention at this point by appellees that Bank had any part in the allegedly fraudulent representations ... which induced appellees to enter into the subordination agreement").

Viewing the evidence in the light most favorable to the trial court's order, and indulging every reasonable inference in its favor, *see Tri–Star Petroleum Co.*, 101 S.W.3d at 587, we conclude the trial court did not abuse its discretion in determining appellees showed a probable right to recover and a probable irreparable injury for which there was no adequate remedy at law. We overrule Graham's first and second issues.

## B. Quasi-estoppel

In its third issue, Graham argues appellees are ineligible for temporary injunctive relief under the equitable principle of quasi-estoppel because they accepted nearly $2.5 million in proceeds from the two loans made by Graham to DHL. Citing *Enochs v. Brown*, 872 S.W.2d 312, 317 (Tex.App.-Austin 1994, no writ), Graham argues quasi-estoppel prevents a party from taking a position that is inconsistent with one it has previously taken to the detriment of another party. We disagree that the doctrine of quasi-estoppel precludes injunctive relief here. Michael Hall intended to enter into the partnership agreement, and Emajean Hall loaned money to the partnership, for the purpose of developing the Hall Tract. Appellees' actions in accepting funds from the proceeds of the loans made by Graham to DHL are consistent with Hall's testimony about his understanding of the loan transactions in 2003, 2005, and 2006, that is, financing and refinancing in order to facilitate development of the Hall Tract. While there was also contrary evidence introduced by Graham that Hall signed consents authorizing certain of the loans made by Graham to DHL and understood the nature of the transactions, the trial court was within its discretion to balance the equities between the parties in determining whether to grant or deny injunctive relief. *See Computek Computer*, 156 S.W.3d at 220 (trial court weighs the respective conveniences and hardships of the parties and balances the equities in determining whether to grant equitable remedy of injunction). We overrule Graham's third issue.

### CONCLUSION

This case involves factually-intertwined claims by two plaintiffs arising out of a complicated financial transaction. There is a single piece of property at issue, and all claims relate to the same alleged misconduct by the defendants. We cannot, after drawing all legitimate inferences from the evidence in the light most favorable to the trial court's ruling, conclude the trial court's application of equitable principles to the entire transaction was so arbitrary that it exceeded the bounds of reasonable discretion. *See Harding v. Lewis*, 133 S.W.3d 693, 697 (Tex.App.-Corpus Christi 2003, no pet.) ("Equity will compel fair dealing, disregarding all forms and subterfuges and looking only to the substance of things."). Because the trial court did not abuse its discretion in granting the temporary injunction, we affirm the trial court's order.