**AFFIRMED; Opinion Filed February 15, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-16-00330-CV

**BAXTER & ASSOCIATES, L.L.C. D/B/A BAXTER ELEVATORS, Appellant**
**V.**
**D&D ELEVATORS, INC., DAVID SHAW, AND DONALD MONCIER, Appellees**

On Appeal from the 417th Judicial District Court
Collin County, Texas
Trial Court Cause No. 417-00670-2016

## MEMORANDUM OPINION

Before Justices Lang, Brown, and Whitehill
Opinion by Justice Lang

Baxter & Associates, L.L.C. d/b/a Baxter Elevators ("Baxter Elevators") appeals the trial court's denial of its application for a temporary injunction in its lawsuit against appellees D&D Elevators, Inc. ("D&D Elevators"), David Shaw, and Donald Moncier based, in part, on alleged misappropriation of trade secrets. In a single issue, Baxter Elevators contends "the trial court's refusal to grant a Temporary Injunction pursuant to Texas Civil Practice and Remedies Code § 134A.003 for the stated reason that [Baxter Elevators] has an adequate legal remedy was an abuse of discretion." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134A.003 (West Supp. 2016).

We decide against Baxter Elevators on its issue. The trial court's order is affirmed.

# I. FACTUAL AND PROCEDURAL CONTEXT

Baxter Elevators and D&D Elevators are both in the business of installing and maintaining residential elevators. Shaw and Moncier were formerly employed by Baxter Elevators and ended that employment in approximately December 2015. In approximately October 2015, while still employed by Baxter Elevators, Moncier and Shaw formed D&D Elevators.

This lawsuit was filed by Baxter Elevators against appellees on February 15, 2016. In its combined "original petition and application for temporary restraining order, temporary injunction and permanent injunction," Baxter Elevators sought damages and injunctive relief based on tortious interference with business relations, breach of fiduciary duty, and "statutory theft of trade secrets" pursuant to the Texas Uniform Trade Secrets Act ("TUTSA") contained in chapter 134A of the Texas Civil Practice and Remedies Code. *See id*. §§ 134A.001–.008. Specifically, Baxter Elevators asserted in part that Shaw and Moncier stole "customer lists" and "lists of prospects" and "proceeded to enter into contracts on behalf of their new company with business opportunities which had come to Shaw's attention while he was still employed at [Baxter Elevators]," including, in part, "job locations at 2705 Desco Street in Flower Mound, Texas, 3523 Cove Lane in Galveston, Texas, 4336 Overhill in Dallas and 4221 Belclaire in Highland Park, Texas." Further, as to its request for a temporary injunction, Baxter Elevators stated in a supplement to its original petition,

2. . . . Plaintiff has shown that Plaintiff's customer lists and bid prospects were highly confidential and proprietary. Moreover, the list of customers, prior installations and bid proposals were uniquely entrusted to Shaw as the office manager and protected by two passwords and kept in an offsite third party server.
3. Notwithstanding his fiduciary obligations to Baxter, Shaw improperly took this confidential customer and prospective customer information and used to [sic] obtain business for his new entity, D&D Elevators. . . .
4. . . . The TUTSA specifically provides for injunctive relief under §134A.003. As such, there is no requirement for Baxter to show irreparable harm

as Texas precedent does not require such a show [sic] where the injunction is a remedy in the statute. . . .

. . . .

5. Regardless of the necessity of proving irreparable harm, Plaintiff will show that it is entitled to injunctive relief because its damages will be hard to determine because of the nature of the trade secrets.

Appellees filed a general denial answer and several counterclaims not relevant to this appeal.

During a two-day hearing on February 25, 2016, and March 4, 2016, the parties presented evidence respecting Baxter Elevators' application for a temporary injunction. On the first day of that hearing, John Stanley Baxter ("Baxter"), the owner of Baxter Elevators, testified in part (1) Shaw was the office manager of Baxter Elevators and was given "responsibility for paying bills" and access to all bid proposals and maintenance contracts; (2) Moncier was a mechanic and performed elevator installation and maintenance; (3) Shaw and Moncier were Baxter Elevators' only employees at the time they left the company; (4) in September 2015, Baxter asked Shaw and Moncier to sign "noncompetition agreements" that stated in part that Baxter Elevators desired to protect its "confidential information," including "lists of customers, pricing and bidding information"; (5) Shaw and Moncier refused to sign those "noncompetition agreements"; (6) the loss of the four elevator jobs described above cost Baxter Elevators approximately $50,000; (7) building permits do not "describe whether or not a home has an elevator," but can indicate whether a residence is likely to have one; and (8) generally, a builder or homeowner will obtain bids and sign contracts respecting elevator installation prior to the time any building permit is issued.

On cross-examination, Baxter stated in part (1) he finds new business in multiple ways, including driving around neighborhoods and looking for residences that might need elevators, contacting builders, meeting with architects, advertising, and "canvassing through a permit system"; (2) those same methods can be used by "anyone"; (3) the alleged trade secret data in

–3–

question was not encrypted or protected by any monitoring system or file tracking software; (4) Baxter Elevators does not have a policy and procedure manual; (5) the "customer lists" in question are kept on a computer and are not labeled as confidential or proprietary; (6) Shaw worked at Baxter Elevators for approximately six years before he was asked to sign the "noncompetition agreement" described above; and (7) Baxter Elevators did not have contracts for the four jobs described above at the time Shaw and Moncier left the company.

Shaw testified in part (1) he became aware of all four of the jobs described above while he was employed at Baxter Elevators; (2) he "pulled permits" respecting those residences; (3) "there was no list" of residences in which Baxter Elevators had installed elevators; (4) after Shaw was no longer employed at Baxter Elevators, he and Moncier "drove around up and down the neighborhoods," wrote down addresses of houses Baxter Elevators had "done elevators in," and sent advertisements to those addresses pertaining to elevator maintenance; (5) additionally, he and Moncier sent advertisements to other residences that appeared to have elevators; and (6) at the time he left Baxter Elevators, he gave Baxter all information he had respecting "every elevator that was a prospect at the time" and showed Baxter how to "pull permits."

At the conclusion of the first day of the hearing, the following exchange occurred between the trial court and counsel for Baxter Elevators:

> [COUNSEL]: We've demonstrated that the only reason that [Shaw] knew about these business opportunities was because he was working at the company.
> . . . .
> THE COURT: Which is a breach of fiduciary duty.
>
> [COUNSEL]: Well, Your Honor, it's also a violation of the Texas Uniform Trade Secrets Act. It's very clear. There doesn't have to be—
>
> THE COURT: You have to prove they were trade secrets.
>
> [COUNSEL]: Well, Your Honor, I think we have.
>
> THE COURT: Yeah. But go ahead and brief on that so that we can all see whether you have or not.

–4–

During the second day of the hearing, Shaw testified (1) while employed at Baxter Elevators, he used two computer passwords provided to him by Baxter to access information stored on the company's server; (2) "[a]nybody that had ever worked in the office" had those two passwords; (3) to find work for D&D Elevators, he drove around "high-end" neighborhoods, contacted builders and architects, advertised, and "canvass[ed] permits"; (4) he is not aware of any customer list for Baxter Elevators and has not obtained such a list by any means; (5) at the time he left Baxter Elevators, he prepared and gave to Baxter a written list of proposals and leads, a "list of jobs," and a spreadsheet showing "running profit"[1]; and (6) he did not retain copies of any of those documents.

Moncier testified in part that he never saw a customer list while he was employed at Baxter Elevators and did not take any customer information. He stated that after he left Baxter Elevators, he (1) sent advertisements to residences where he had worked on elevators while employed by Baxter Elevators and previous employers and (2) "did some research as well," which included driving through neighborhoods to identify homes with elevators.

Following the two-day hearing, the trial court signed a March 4, 2016 order denying Baxter Elevators' application for a temporary injunction without stating the grounds for that denial. In email correspondence to the parties dated March 14, 2016, the trial court's "court administrator," Angel Marksberry, attached that order and stated as follows:

> Please find [the trial judge's] ruling below in the above referenced case, and attached Order Denying Plaintiffs TI.

> The Court makes the following rulings:

> Injunction denied. Order signed denying Plaintiffs TI will stand.

---

[1] Copies of those three documents were admitted into evidence under seal during the hearing.

–5–

I do find that trade secret as to existing jobs or bids was obtained by Mr. Shaw as an employee of Baxter on 3 properties. Mr. Shaw admitted to obtaining information while working for Baxter and bid against his former employer. Employer made information about existing clients and new bids secret. I also find that Mr. Shaw was in a fiduciary relationship with his employer.

Accordingly, there is an adequate remedy at law for breach of fiduciary relationship, as the damages are quantifiable pecuniary losses on those three (3) jobs. This case will be set for trial upon a Scheduling Order.

. . . .

Thank you

Angel

Baxter Elevators filed (1) a March 15, 2016 "Request for Findings of Fact and Conclusions of Law" and (2) a March 16, 2016 motion for reconsideration. In its motion for reconsideration, Baxter Elevators argued in part (1) "[b]y virtue of the fact that the [trial court] found that the Defendants (a) had breached their fiduciary duty to the Plaintiff by (b) using secret confidential information they learned about while employed by the Plaintiff to improperly compete, the [trial court] must necessarily have found that there was a violation of the Texas Uniform Trade Secret Act as a matter of law"; (2) "[b]ecause the Trade Secret Act has a specific provision for an injunction for its enforcement, Texas Courts have never required that there be a showing of 'irreparable harm' in order to have an injunction granted which enforces the Statute"; and (3) regardless, Baxter Elevators has demonstrated irreparable harm.

In email correspondence to the parties dated April 4, 2016, the trial court's "court administrator" stated as follows:

Please find a ruling from [the trial judge] below:

. . . [T]he Court is of the opinion that a temporary injunction hearing should be held. This hearing will be set within 60 days, on the issues of trade secret/confidential information/breach of fiduciary duty. The Court is further ordering expedited discovery.

The temporary injunction hearing has been scheduled for June 7 at 10:00 am.

At the hearing on June 7, 2016, Shaw testified in part (1) since leaving Baxter Elevators, he has joined "builders associations" in which builders with whom he worked while at Baxter Elevators are also members and (2) he has "a very good memory that's photographic" and has contacted customers and builders he recalled from his work at Baxter Elevators in order to generate business for D&D Elevators.

Baxter testified on cross-examination, in part,

> Q. Mr. Baxter, what—what do you contend is the secret here today? The identity of the builders or the identity of the individual jobs?
> . . . .
> A.  The trade secret is my customer list.
>
> Q. A customer list. So that means the builder?
>
> A. That's the builder.
>
> Q. You think the existence of these builders is a secret?
>
> A. They're my customers, my contact. They're my customers that I've had that's a customer list [sic] that's protected by trade secrets.

Additionally, Baxter stated he does not have an "exclusive relationship" with any builder.

During closing argument at that hearing, the following exchange occurred between the trial court and counsel for Baxter Elevators:

> [COUNSEL]: . . . The Court has already made findings, based on the other two hearings, that there was a fiduciary relationship, that Mr. Shaw used confidential information and trade secrets which he used to compete with the plaintiff in this case. . . .
>
> THE COURT: Oh, I actually want to correct you. I did not find trade secrets. I specifically did not find trade secrets. So I did find that Mr. Shaw was in a fiduciary relationship with Mr. Baxter and Baxter Elevator—Baxter & Associates. . . .

In email correspondence to the parties dated June 9, 2016, the trial court's "court administrator" stated as follows:

Please find [the trial judge's] ruling below:

> The Court, after considering three (3) days of testimony and evidence, briefing on issues before and after all 3 days of testimony and evidence, case law and argument of counsel, makes the following findings:
>
> The Temporary Injunction is denied as there is an adequate remedy at law and pecuniary loss can easily be calculated at a trial on the merits. Status Quo is preserved without the necessity of an injunction.

The trial court signed a June 10, 2016 "Second Order Denying Plaintiff's Temporary Injunction" in which it denied Baxter Elevators' application for a temporary injunction without stating a reason. This appeal timely followed.[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West Supp. 2016) (allowing for interlocutory appeal from order refusing temporary injunction).

## II. TRIAL COURT'S DENIAL OF TEMPORARY INJUNCTION

### A. Standard of Review

We review a trial court's order granting or denying a request for a temporary injunction under an abuse of discretion standard. *See Amend v. Watson*, 333 S.W.3d 625, 627 (Tex. App.—Dallas 2009, no pet.); *Miller v. Talley Dunn Gallery, LLC*, No. 05-15-00444-CV, 2016 WL 836775, at *5 (Tex. App.—Dallas Mar. 3, 2016, no pet.) (mem. op.) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)). In reviewing the trial court's decision, we view the evidence in the light most favorable to the trial court's order and indulge every reasonable inference in its favor. *Miller*, 2016 WL 836775, at *5 (citing *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 478 (Tex. App.—Dallas 2010, no pet.)). We may not substitute our judgment for the trial court's unless the trial court's action was so arbitrary that it exceeded the bounds of

---

[2] Baxter Elevators filed a March 22, 2016 notice of appeal and a March 24, 2016, amended notice of appeal, both of which stated Baxter Elevators desired to appeal the trial court's order dated March 4, 2016. Subsequently, an unopposed motion to abate this appeal was filed in this Court by Baxter Elevators. This Court granted that motion on April 25, 2016, and this appeal was reinstated on July 11, 2016.

reasonable discretion. *Id.* Further, a clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *See, e.g.*, *In re M-I L.L.C.*, No. 14-1045, 2016 WL 2981342, at *2 (Tex. May 20, 2016). We review de novo any determinations on questions of law that the trial court made in support of the order. *See, e.g.*, *Miller*, 2016 WL 836775, at *5.

When findings of fact and conclusions of law are not timely requested or filed, we imply all necessary findings in support of the trial court's judgment. *See, e.g.*, *Dallas Hous. Auth. v. Nelson*, No. 05-13-00818-CV, 2015 WL 1261953, at *2 (Tex. App.—Dallas Mar. 19, 2015, pet. denied) (mem. op.) (citing *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989) (per curiam)). However, when a reporter's record is included in the record on appeal, the implied findings may be challenged for legal and factual sufficiency. *See id.* We review implied findings by the same standards we use in reviewing the sufficiency of the evidence to support a jury's answers or a trial court's fact findings. *Id.* In conducting a legal sufficiency review, we must determine whether the evidence would enable the factfinder to reach the determination under review. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)); *see also Fleischer v. Coffey*, 270 S.W.3d 334, 337 (Tex. App.—Dallas 2008, no pet.) (in reviewing legal sufficiency, no-evidence challenge fails if there is more than scintilla of evidence to support finding). We will not disturb a finding for factual insufficiency unless the evidence in support of the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Nelson*, 2015 WL 1261953, at *2 (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001)). We may not substitute our judgment for that of the trier of fact or pass on the credibility of the witnesses. *See Sunl Grp., Inc. v. Zhejiang Yongkang Top Imp. & Exp. Co., Ltd.*, 394 S.W.3d 812, 817 (Tex. App.—Dallas 2013, no pet.) (citing *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998)). In the absence of findings of fact and conclusions of law, the judgment of the trial court must be affirmed if it can be upheld on

any available legal theory that finds support in the evidence. *Nelson*, 2015 WL 1261953, at *2 (citing *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987) (per curiam)); *see also Cold Spring Granite Co. v. Karrasch*, 96 S.W.3d 514, 517 (Tex. App.—Austin 2002, no pet.) (reviewing court "cannot reverse a trial court's order if the trial court was presented with conflicting evidence and the record includes evidence that reasonably supports the trial court's decision").

### B. Applicable Law

The party applying for a temporary injunction bears the burden to prove it is entitled to that relief. *See, e.g., Wyly v. Preservation Dallas*, 165 S.W.3d 460, 465 (Tex. App.—Dallas 2005, no pet.); *Cold Spring Granite Co.*, 96 S.W.3d at 516.

TUTSA was enacted in 2013 "to make uniform the law with respect to the subject of this chapter among states enacting it." TEX. CIV. PRAC. & REM. CODE ANN. § 134A.008. Subsection 134A.002(6) provides,

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, process, financial data, or list of actual or potential customers or suppliers, that:
> (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id*. § 134A.002(6). Additionally, subsection 134A.002(3) defines "misappropriation" as acquisition or disclosure of a "trade secret" under certain circumstances.[3] *Id*. § 134A.002(3).

---

[3] That subsection states,

(3) "Misappropriation " means:
(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(B) disclosure or use of a trade secret of another without express or implied consent by a person who:
(i) used improper means to acquire knowledge of the trade secret;
(ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:
(a) derived from or through a person who had utilized improper means to acquire it;
(b) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

–10–

Pursuant to subsection 134A.003(a), "[a]ctual or threatened misappropriation may be enjoined." *Id.* § 134A.003(a). Further, subsection 134A.007(a) states that, subject to limited exceptions, "this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." *Id.* § 134A.007(a). Specifically, chapter 134A "does not affect: (1) contractual remedies, whether or not based upon misappropriation of a trade secret; (2) other civil remedies that are not based upon misappropriation of a trade secret; or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." *Id.* § 134A.007(b). Also, (1) the chapter "does not affect the disclosure of public information by a governmental body under Chapter 552, Government Code," and (2) to the extent chapter 134A conflicts with the Texas Rules of Civil Procedure, chapter 134A controls. *Id.* § 134A.007(c)–(d).

Pursuant to Texas Rule of Civil Procedure 296, in any case tried in a district court without a jury, any party may request written findings of fact and conclusions of law within twenty days after a judgment is signed. TEX. R. CIV. P. 296. The trial court shall file its findings of fact and conclusions of law within twenty days after a timely request is filed. TEX. R. CIV. P. 297. Further, if the trial court does not file findings and conclusions within that time period, rule 297 requires a party to file a notice of past due findings and conclusions within thirty days after filing the original request. TEX. R. CIV. P. 297; *see In re W.C.B.*, 337 S.W.3d 510, 513 n.2 (Tex. App.—Dallas 2011, no pet.). Failure to file that notice waives a party's ability to complain on appeal about the trial court's failure to file findings of fact and conclusions of law. *In re W.C.B.*, 337 S.W.3d at 513 n.2 (citing *Burns v. Burns*, 116 S.W.3d 916, 921–22 (Tex. App.—Dallas 2003, no pet.)).

---

(c) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii) before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002(3).

## C. Application of Law to Facts

In its sole issue on appeal, Baxter Elevators complains of "the trial court's refusal to grant a Temporary Injunction pursuant to Texas Civil Practice and Remedies Code § 134A.003 for the stated reason that [Baxter Elevators] has an adequate legal remedy." According to Baxter Elevators, (1) "[t]he trial court made findings that established the existence of trade secrets and that Defendant Shaw was in a fiduciary relationship with his former employer"; (2) "[t]he trial court's stated reason for denying injunctive relief was that Plaintiff had failed to show irreparable harm because its damages could be calculated"; (3) "[b]ecause the basis for Appellant's claim for injunctive relief under the Texas Uniform Trade Secrets Act is statutory and not equitable it does not have to prove irreparable harm under well settled Texas judicial precedent"; and (4) "[a]s a result, the trial court should have granted a prohibitive injunction against the Defendants soliciting and obtaining business on jobs they worked on while employed by [Baxter Elevators] or elevators they serviced while employed there." Additionally, the argument section of Baxter Elevators' appellate brief contains approximately nine pages of argument and citations to authority respecting the following contentions: (1) none of the information in question "is either public nor [sic] readily ascertainable"; (2) Baxter Elevators "made efforts to keep the trade secrets secret"; and (3) the information in question was "misappropriated" by appellees.

Appellees respond in part that this Court "should dismiss this appeal because the Order being appealed has been superseded by subsequent Order." Alternatively, appellees assert (1) the trial court's order should be affirmed because "[t]he lack of findings and conclusions compels the presumption that no trade secrets exist under [TUTSA]" and (2) "[Baxter Elevators'] sole appeal point is inapposite" because the trial court's order "must be affirmed on any legal theory that is supported by the evidence (including the lack of any trade secrets)."

–12–

We begin by addressing appellees' assertion that this appeal should be dismissed. According to appellees, "[b]ecause the Order being appealed was superseded and replaced by a subsequent order on the very same subject matter, this appeal is moot." The record shows (1) Baxter Elevators stated in both its March 22, 2016 notice of appeal and its March 24, 2016 amended notice of appeal that the order being appealed from was the trial court's March 4, 2016 order and (2) no amended notice of appeal was filed after the trial court's June 10, 2011 order. However, Texas Rule of Appellate Procedure 27.3 provides in part,

> After an order or judgment in a civil case has been appealed, if the trial court modifies the order or judgment, or if the trial court vacates the order or judgment and replaces it with another appealable order or judgment, the appellate court must treat the appeal as from the subsequent order or judgment and may treat actions relating to the appeal of the first order or judgment as relating to the appeal of the subsequent order or judgment.

TEX. R. APP. P. 27.3. Appellees cite no authority for their position that this appeal should be dismissed as moot. On this record, we decline to dismiss this appeal. *See id*.

Next, we consider appellees' contention that Baxter Elevators' issue on appeal is "inapposite." Appellees argue that because the trial court's order must be affirmed based on "lack of any trade secrets," Baxter Elevators' issue on "the existence of 'adequate legal remedy' and whether or not it applies to [TUTSA]" is "not properly a matter for consideration in this appeal."

The record shows Baxter Elevators' sole issue on appeal specifically complains as to the trial court's refusal to grant a temporary injunction pursuant to TUTSA "for the stated reason that [Baxter Elevators] has an adequate legal remedy." However, as noted above, Baxter Elevators' brief on appeal contains approximately nine pages of argument and citations to authority respecting other grounds argued by the parties in the trial court on which the trial court could have based its order, i.e., whether the information in question constitutes "trade secrets" pursuant to TUTSA and whether such information was "misappropriated." On this record, we

–13–

construe Baxter Elevators' appellate brief to assert error respecting those grounds. *See* TEX. R. APP. P. 38.9 (titled "Briefing Rules to be Construed Liberally"); *see also Plexchem Int'l, Inc. v. Harris Cty. Appraisal Dist.*, 922 S.W.2d 930, 930–31 (Tex. 1996) (per curiam) (concluding that three pages of arguments and authorities were sufficient to challenge, on appeal, specific ground for summary judgment where appellant raised general point of error, but did not expressly assign error as to that specific ground); *Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*, No. 05-13-00506-CV, 2015 WL 6750047, at *37 n.46 (Tex. App.—Dallas, Nov. 4, 2015, no pet.) (mem. op.) (concluding issue on appeal was not waived where contentions and argument were presented in appellate brief).

Now, we address appellees' argument that the trial court's order should be affirmed because "there are no findings of fact" and the evidence is legally and factually sufficient to support an implied finding of "the lack of any trade secrets." Baxter Elevators argues (1) "the trial court found that there were trade secrets" and (2) "[appellees'] contentions regarding application of the TUTSA are not legally or factually supportable."

As described above, the record shows (1) neither of the trial court's orders stated any ground upon which the application for temporary injunction was denied and (2) Baxter Elevators filed a March 15, 2016 "Request for Findings of Fact and Conclusions of Law." On appeal, Baxter Elevators asserts in part (1) "[t]he trial court made findings that established the existence of trade secrets and that Defendant Shaw was in a fiduciary relationship with his former employer"; (2) "[f]ollowing the initial hearing . . . , the trial court denied the temporary injunction but made the following findings via e-mail: that the Plaintiff had demonstrated that it had trade secrets as to three of the four jobs, that the Plaintiff had taken reasonable steps to protect the trade secrets, and that Defendant Shaw had a fiduciary relationship to Baxter"; and (3) "[d]espite written requests, the trial court refused to make any findings of fact or conclusions

of law except for the aforementioned March 14 email." However, to the extent Baxter Elevators argues the March 14, 2016 email correspondence from the trial court's "court administrator" constitutes findings of fact and conclusions of law made by the trial court, (1) Baxter Elevators cites no authority to support that position and (2) during the June 7, 2016 hearing, the trial court stated to counsel for Baxter Elevators, "Oh, I actually want to correct you. I did not find trade secrets. I specifically did not find trade secrets." Further, the record does not show Baxter Elevators filed any notice of past due findings and conclusions pursuant to rule 297. *See* TEX. R. CIV. P. 297. On this record, we conclude no findings of fact and conclusions of law were made by the trial court and Baxter Elevators has not preserved for appeal any complaint as to the lack of such findings and conclusions. *See* TEX. R. CIV. P. 296, 297; *In re W.C.B.*, 337 S.W.3d at 513 n.2; *Burns*, 116 S.W.3d at 922. Accordingly, we (1) imply a finding that Baxter Elevators did not show the existence of a trade secret and (2) will affirm the trial court's order if that finding is supported by legally and factually sufficient evidence. *See Nelson*, 2015 WL 1261953, at *2.

Pursuant to TUTSA, "trade secret" means information, including a "list of actual or potential customers or suppliers," that (1) "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and (2) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002(6).

As to the first requirement, Baxter Elevators argues Baxter testified (1) building permits do not "describe whether or not a home has an elevator," but rather merely indicate whether a residence is likely to have one, and (2) generally, a builder or homeowner will obtain bids and sign contracts respecting elevator installation prior to the time any building permit is issued. Further, according to Baxter Elevators, (1) "canvassing" neighborhoods as described by Shaw

–15–

"would be so enormously expensive and time consuming that there is no way the Defendants could have simply lucked upon these residential contracts without improperly using confidential information" and (2) "if the information is not publicly available and has to be obtained or can be obtained only by private inquiry, then it is by definition a trade secret under the Act."

Additionally, Baxter Elevators contends (1) "[e]ven if the names of the customers and particular builders could be somehow ascertained by private inquiry even though none of the information was public, Texas courts still find liability if the actual manner in which the trade secrets were obtained was as a result of the Defendants' position of trust and confidence at the former employer," and (2) that rule applies here because Shaw "admitted under oath" that D&D Elevators did not obtain the information concerning the four residences in question and several others by "accessing public information," "canvassing neighborhoods," or "looking at building permits," but rather "he admitted that he got the information by virtue of his confidential relationship of trust as the office manager of Baxter and Associates." In support of that contention, Baxter Elevators cites a Texas common law rule described in a case pre-dating the 2013 enactment of TUTSA, *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 601 (Tex. App.—Amarillo 1995, no writ).

Appellees argue (1) "at least as to trade secret claims, [TUTSA] itself and itself alone is the law of the land," and (2) evidence shows Baxter Elevators' alleged "trade secret information" is not a trade secret because it was "derived from information generally known to, and is readily ascertainable by, members of the public." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002(6)(A).

As described above, TUTSA section 134A.007 provides that, subject to certain exceptions,[4] "this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." *Id*. § 134A.007. Baxter Elevators does not address or explain, and the record does not show, how any of the exceptions stated in that section are applicable in this case. *See id*. Further, Baxter Elevators' position that Texas courts can find liability for misuse of trade secrets "[e]ven if the names of the customers and particular builders could be somehow ascertained by private inquiry" is not consistent with the requirement in subsection 134A.002(6)(A) that a trade secret must "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." *See id.* § 134A.002(6)(A). Consequently, because the common law rule described by Baxter Elevators conflicts with the definition of trade secret in subsection 134A.002(6), we conclude the plain language of subsection 134A.007(a) makes it clear the common law rule has been displaced by TUTSA. *See id*. § 134A.007(a).[5]

The record shows Shaw testified (1) there is no "customer list" for Baxter Elevators that he is aware of; (2) he found work for D&D Elevators by driving around "high-end" neighborhoods, contacting builders and architects, advertising, and "canvass[ing] permits"; and (3) he "pulled permits" respecting the four residences described in Baxter Elevators' petition. Also, Moncier testified he (1) never saw a customer list while he was employed at Baxter Elevators and (2) found work for D&D Elevators by sending advertisements to residences where he had previously worked and driving through neighborhoods to identify homes with elevators.

---

[4] As stated above, pursuant to subsection 134A.007(b), chapter 134A "does not affect: (1) contractual remedies, whether or not based upon misappropriation of a trade secret; (2) other civil remedies that are not based upon misappropriation of a trade secret; or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." *Id*. § 134A.007(b).

[5] Specifically, that subsection states "[e]xcept as provided by Subsection (b), this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." *Id*. § 134A.007(a); *see also supra* note 4.

On this record, we conclude the evidence is legally and factually sufficient to support an implied finding that the information in question was not within the definition of "trade secret" in subsection 134A.002(6)(A) because it did not "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." *See id.* § 134A.002(6)(A); *see also Fleischer*, 270 S.W.3d at 337 (legal sufficiency challenge fails if there is more than scintilla of evidence to support finding); *Sunl Grp., Inc.*, 394 S.W.3d at 817 (in conducting factual sufficiency review, we do not substitute our judgment for that of trier of fact or pass on credibility of witnesses).

As to the second requirement of subsection 134A.002(6), Baxter Elevators contends the information in question was "the subject of efforts that are reasonable under the circumstances to maintain its secrecy" as evidenced by the following: (1) "all of the company's files concerning past installations, prospects, customers, ongoing business and lists of maintenance contracts" were "kept on a server located offsite and [were] not accessible by any customer, person, employee (even Moncier) other than Shaw and Stan Baxter himself"; (2) two passwords were required to access that information; (3) in September 2015, Baxter asked Shaw and Moncier to sign "noncompetition agreements" that stated in part that Baxter Elevators desired to protect its "confidential information," including "lists of customers, pricing and bidding information"; and (4) even though Shaw and Moncier refused to sign the "noncompetition agreements," the fact that Baxter attempted to have them sign the agreements was "additional notice to them that he intended to keep the password protected information concerning his customers confidential."

Appellees contend Baxter Elevators "made no efforts, much less reasonable efforts under the circumstances, to maintain secrecy."

The record shows (1) Shaw worked at Baxter Elevators for approximately six years before he was asked to sign the "noncompetition agreement" described above and (2) Shaw and Moncier remained employed by Baxter Elevators despite refusing to sign the "noncompetition agreement" in September 2015. Further, Baxter testified (1) the alleged trade secret data in question was not encrypted or protected by any monitoring system or file tracking software and (2) the "customer lists" in question are not labeled as confidential or proprietary. Additionally, Shaw testified "[a]nybody that had ever worked in the office" had the two passwords in question. On this record, we conclude the evidence is legally and factually sufficient to support an implied finding that the information in question was not the subject of any efforts to maintain its secrecy. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6)(B); *see also Fleischer*, 270 S.W.3d at 337; *Sunl Grp., Inc.*, 394 S.W.3d at 817.

Because the record supports an implied finding that the information in question is not a trade secret pursuant to TUTSA, we conclude the trial court's denial of Baxter Elevators' application for a temporary injunction was not an abuse of discretion. We decide against Baxter Elevators on its issue.

### III. CONCLUSION

We conclude the trial court did not abuse its discretion by denying Baxter Elevators' application for a temporary injunction. The trial court's order is affirmed.

160330F.P05

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

–19–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BAXTER & ASSOCIATES, L.L.C. D/B/A
BAXTER ELEVATORS, Appellant

No. 05-16-00330-CV          V.

D&D ELEVATORS, INC., DAVID SHAW,
AND DONALD MONCIER, Appellees

On Appeal from the 417th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 417-00670-2016.
Opinion delivered by Justice Lang, Justices
Brown and Whitehill participating.

In accordance with this Court's opinion of this date, the order of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees D&D ELEVATORS, INC., DAVID SHAW, AND
DONALD MONCIER recover their costs of this appeal from appellant BAXTER &
ASSOCIATES, L.L.C. D/B/A BAXTER ELEVATORS.

Judgment entered this 15th day of February, 2017.