

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00307-CV

_____

RICHARD EUGENE MICHAEL AND MIKE WILLIAMS, Appellants

V.

NE CS FIRST NATIONAL, LP, Appellee

---

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-335909-22

---

Before Bassel, Womack, and Walker, JJ.
Memorandum Opinion on Rehearing by Justice Bassel

## MEMORANDUM OPINION ON REHEARING

## I. Introduction

After we issued our memorandum opinion and judgment in this appeal, Appellant Richard Eugene Michael filed a motion for rehearing challenging part of our memorandum opinion, specifically our reliance on *Northpointe LTC, Ltd. v. Durant*, No. 01-22-00215-CV, 2022 WL 17835223, at *7 (Tex. App.—Houston [1st Dist.] Dec. 22, 2022, no pet.) (mem. op.). We asked for a response to the motion for rehearing, but none was received. After reviewing the motion for rehearing, we deny the motion. However, to clarify our analysis on the authentication challenge, we withdraw our February 8, 2024 memorandum opinion and substitute the following in its place. We also withdraw the prior judgment and issue a new one so that its date of issuance corresponds with the date of this substituted memorandum opinion.

Appellants Mike Williams and Richard Eugene Michael have each filed an interlocutory appeal from an amended temporary-injunction order. The order restrains the sale of certain condominiums in Mexico that Williams and Michael allegedly owned and contracted to convey to Appellee NE CS First National, LP. The order currently before us was amended as a result of our prior opinion in which we dissolved the trial court's first temporary-injunction order because it failed to meet the requirements of Texas Rule of Civil Procedure 683. *See Williams v. NE CS First Nat'l, LP*, No. 02-23-00086-CV, 2023 WL 4781174, at *2 (Tex. App.—Fort Worth July 27, 2023, no pet.) (mem. op.).

Williams raises a host of issues claiming that the trial court abused its discretion by granting NE injunctive relief. Rather than listing our dispositions by issue, we will state our holdings based on the topics that are covered in the complaints that were raised in Williams's appeal:

- The record supports the trial court's exercise of its discretion to conclude that NE made a showing of imminent and irreparable injury or harm sufficient to support the issuance of a temporary injunction;

- The contract forming the basis of NE's claim does not lack consideration;

- The argument that Williams was not a proper party to the contract at issue fails;

- The argument that the record conclusively established that the contract at issue was invalid because one of the parties to it could not be a successor in interest that was bound by the contract fails;

- We do not reach Williams's contention that NE failed to offer proof of a claim under the Texas Theft Liability Act or a conversion claim because the trial court did not predicate its amended injunction order on those claims;

- NE did not make an election of remedies that barred its ability to obtain injunctive relief;

- We sustain Williams's issue contending that the trial court erred by enjoining the sale of a condominium not referenced in the contract at issue; and

- The contention that NE could have filed a lis pendens notice in Mexico that obviated its need for injunctive relief fails.

Michael, in his appeal, raises a single issue claiming that he is not bound by the contract at issue because he specifically denied that he had executed it and because there is no proof that he signed it. However, when the contract was offered into

3

evidence, Michael's counsel stated that he had no objection to its admission.  Thus, for purposes of the amended temporary injunction, Michael has waived the argument that the contract cannot be authenticated because of a lack of proof that he signed it.

Based on our disposition of the issues raised in these appeals, we dissolve the portion of the amended temporary-injunction order that enjoins the sale of a condominium not referenced in the contract at issue and affirm the amended temporary-injunction order as modified.

## II.  Factual and Procedural Background

This controversy turns on a written agreement executed after NE learned of a defalcation by Williams and his company.  Williams was identified in NE's petition as a principal of Purchasing Solutions International, Inc. (PSI), and as president of PSI he signed a contract with NE to provide procurement services for the redevelopment of a historic property in Oklahoma City; the procurement contract was titled "Proposal for OFCI, FF&E[,] and OS&E Procurement Services."

NE learned that approximately $2 million that it had provided to PSI pursuant to the proposal for the purchase of materials to be used in the redevelopment had not been paid to the vendors who had supplied the materials.  Upon discovery of this state of affairs, NE; a company named Consultants in Purchasing, Inc. (CIP) (that was identified in the document at issue as a "successor in interest" to PSI); Williams (identified in the document as MWilliams); and Williams's spouse, Michael (identified

4

in the document as RMichael) entered into an agreement that was titled an Amendment to the proposal for procurement services.

The Amendment recited as follows how the funds that NE had provided under the terms of the proposal were misused:

RECITALS:

A. NE and Purchasing Solutions International, Inc. ("PSI") entered into that certain "Proposal for OFCI, FF&E[,] and OS&E Procurement Services" ("Agreement") on or about February 23, 2018. On or about December 30, 2020, CIP notified NE that it owned the interest of PSI in the Agreement through a name change of PSI.

B. During the course of the performance of the Agreement by CIP, NE made payments to CIP [that] were requested by CIP to pay vendors for delivery of goods procured for NE by CIP and [that], in some cases, have (1) not been paid to vendors but kept by CIP and/or MWilliams[;] (2) used for purposes other than performance of the Agreement and payment to vendors for the benefit of NE, as required by the Agreement[;] and (3) used for the benefit of CIP and/or MWilliams to the detriment of NE. Such payments are referred to herein as the "CIP Retained Funds."

C. CIP and MWilliams have offered to repay NE the CIP Retained Funds, with interest from the date such amounts were taken by CIP and MWilliams, as well as certain costs incurred by NE or its designee as further described herein, and MWilliams has offered to convey property owned jointly by MWilliams and RMichael to NE (or to a designee of NE) pending repayment of the CIP Retained Funds plus interest thereon and the costs referred to herein.

D. Currently, the total amount of CIP Retained Funds has not been fully established but is estimated to be in the range of $2,000,000.

5

The body of the Amendment acknowledged (in the following provision) how CIP and Williams had diverted the funds (described in the quoted recitals as the CIP Retained Funds) and had

> taken the CIP Retained Funds for their own purposes and not for the purpose of performing CIP's obligations pursuant to the Agreement, without the knowledge, authority[,] or consent of NE or any person acting on behalf of NE, by invoicing NE for items purportedly to be procured pursuant to the Agreement, backed-up by invoices from suppliers, and when NE paid the amounts invoiced to CIP, CIP and/or MWilliams did not use the funds for purposes of paying vendors as invoiced but diverted the funds to other purposes including for the personal benefit of MWilliams . . . .

CIP and Williams agreed to repay the CIP Retained Funds and "to convey certain property owned by MWilliams and RMichael to NE pending the repayment of the CIP Retained Funds with interest and costs on or before one (1) year from the date of this Agreement."

The Amendment also required CIP and Williams to provide records so that the true amount of the CIP Retained Funds could be calculated, with the calculated amount being included in what the Amendment defined as the Amount Due. The Amendment then contained the undertaking that "CIP and MWilliams hereby unconditionally agree, jointly and severally, to pay to NE the '<u>Amount Due</u>' (as defined herein) on or before one (1) year from the date hereof, without notice or demand."

The Amendment next dealt with a number of topics, including (1) a description of the property to be conveyed to NE "pending repayment in full of the CIP Retained

6

Funds" as certain "condos" that Williams and Michael owned in Mexico; (2) an itemization of additional expenses associated with the conveyance of the condos regarding what would be included as part of the "Amount Due"; (3) the establishment of a mechanism to determine the value of the condos should the parties not be able to agree on the value; (4) a provision that

> [u]pon payment in full of the Amount Due on or before the Due Date, NE and/or its designee shall cause the MWilliams Property to be reconveyed to MWilliams or his designee at the sole cost and expense of MWilliams (including any and all Costs, as such term is defined herein, imposed on NE or its designee in connection with such transfer[)];

and (5) the requirement that Williams assist in the transfer of the condos to NE.

The Amendment next noted that Michael co-owned the condos and that "MWilliams [would] seek the joinder of RMichael to this Amendment upon which the interest of RMichael in the Condos will also be conveyed to NE or its designee." A schedule listing three condos in Mexico and their values was attached to the Amendment. The Amendment has a signature purporting to be Michael's by which he acknowledged that he had joined in certain provisions of the Amendment.

Finally, the Amendment provided that "[e]xcept as set forth herein, the Agreement [i.e., the original procurement agreement or Proposal] shall remain in full force and effect provided that no further fees shall be payable by NE to CIP and [that] any and all payments made or to be made by NE shall be made directly to vendors and not to CIP."

7

NE later filed suit against CIP, Williams, and Michael alleging the acts underlying its claim that CIP and Williams had misused funds paid pursuant to the proposal for procurement services, the execution of the Amendment, and the execution of a second amendment and that after efforts to finalize conveyance of the condos, Michael had stated that he "would not honor [the Amendment] and transfer the condominiums." NE's petition alleged causes of action against Williams for violation of the Texas Theft Liability Act and conversion, against Williams and Michael for breach of contract, and against CIP for breach of contract. Williams answered with a general denial and various affirmative defenses and specific denials. Michael also answered with a general denial and various affirmative defenses and specific denials, including a specific denial that he had executed the Amendment or had granted authority to anyone to execute the Amendment on his behalf.

Several months after filing suit, NE filed an application for temporary restraining order and a temporary injunction. The application outlined the background of the defalcation, the Amendment, and how NE claimed that Williams had initially cooperated in the transfer of the condos and then had reneged. NE asserted that it was entitled to specific performance of the Amendment's agreement to convey the condos and sought to restrain primarily the acts of "[c]onveying or encumbering the condominiums in any other than to [NE]."

The trial court held a temporary-injunction hearing. Neither Williams nor Michael testified at the hearing. The only witness was NE's in-house legal counsel

8

who had prepared and negotiated the Amendment. We will discuss the specifics of the testimony in more detail when discussing the issues raised in the appeal, but in summary, the testimony detailed the background of the dispute that we have already described. The only exhibits admitted during the hearing were the Amendment, email chains with discussions between the parties about implementing the conveyance of the condos, a document partially in Spanish dealing with conveyances that appeared to be notarized in English with the purported signatures of both Williams and Michael, and documents dealing with the corporate status of PSI and its bankruptcy.

The trial court signed a temporary injunction order that described the three condos listed in the Amendment and enjoined CIP,[1] Williams, and Michael from

> a. conveying or encumbering the condominiums in any manner other than to [NE];
>
> b. materially altering the condominiums in any way;
>
> c. destructing the condominiums; and
>
> d. failing to maintain the condominiums.

Williams and Michael filed an interlocutory appeal of the temporary-injunction order. We dissolved the temporary injunction and remanded the matter to the trial court because the trial court's order contained only conclusory statements as to why NE would suffer probable injury should an injunction not issue, thus failing to meet the requirements of Texas Rule of Civil Procedure 683. *See id.*

---

[1]CIP is not involved in this appeal.

9

After our remand, the trial court conducted another hearing to discuss the next steps in the case. No formal testimony was offered at the later hearing, but counsel for the parties made various statements to the court. The salient facts revealed during the hearing were that one of the condos subject to the Amendment had been sold before the dissolved temporary-injunction order was rendered. "Another one was sold during the pendency of what turned out to be a void injunction." The parties also referenced a Rule 11 agreement that had been filed in which a condo not described in the original temporary-injunction order was made subject to its restraints. Counsel for Williams stated that the Rule 11 agreement was no longer effective as it was tied to the restraints in the temporary-injunction order that we dissolved in our prior opinion.

After this hearing, NE filed a supplemental application for temporary restraining order and temporary injunction that reiterated the transfer of two of the condos subject to the Amendment and provided evidence that funds from the sale of one of the condos had been used to purchase another condo—the one that had been subject to the Rule 11 agreement.

The trial court then signed an amended temporary-injunction order that chronicled the litigation, the sale of two of the condos subject to the Amendment, and the purchase of another condo with the sales proceeds from one of those condos.

The order noted that "Counsel for Defendants"[2] had admitted that the condo sales and the purchase of the new condo had occurred. The order then referenced a breach of the Amendment as the cause of action at issue and a probable right to relief in the form of a right to specific performance of the Amendment, set forth how NE would suffer irreparable harm because NE had a vested interest in the condos, and stated that "enjoining [Appellants] from transferring or otherwise disposing of the property is necessary to prevent this injury." The order concluded by restraining the acts of "conveying, transferring, encumbering, or materially altering in any way" the one condo subject to the Amendment not yet sold and the newly purchased condo. Williams and Michael each filed a notice of interlocutory appeal from the amended temporary-injunction order.

### III. Analysis

**A.** **We set forth the standard of review that applies when reviewing a temporary-injunction order.**

In an interlocutory appeal involving a temporary injunction, the following standards govern us:

> "A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020) (quoting *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). Such an injunction functions "to preserve the status quo of the litigation's subject matter pending a

---

[2]It appears that this is a reference to a statement made by Williams's counsel at the hearing on the amended temporary injunction. Michael's counsel did not make a statement but merely agreed with what Williams's counsel had said, and no one appeared on behalf of CIP.

trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g) (citing *Walling*, 863 S.W.2d at 57). "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id.*

The trial court exercises its sound discretion in deciding whether to issue a temporary injunction, and we may reverse that decision only if we conclude that the trial court abused its discretion because its actions were "so arbitrary that [they] exceeded the bounds of reasonable discretion." *Id.* Our abuse-of-discretion review requires that we "view the evidence in the light most favorable to the trial court's order [and that we indulge] every reasonable inference in its favor." *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 196 (Tex. App.—Fort Worth 2005, no pet.). Thus, if the trial court must resolve a conflict in the evidence, its resolution of a fact issue is one to which we must defer. *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 292 (Tex. App.—Beaumont 2004, no pet.). However, we review the trial court's application of the law to established facts and the resolution of pure legal questions de novo. *Jelinis, LLC v. Hiran*, 557 S.W.3d 159, 165 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) . . . ; *Tom James of Dall., Inc. v. Cobb*, 109 S.W.3d 877, 883 (Tex. App.—Dallas 2003, no pet.). Also, "[w]hen the trial court embeds findings of fact and conclusions of law in its order denying a temporary injunction, the findings and conclusions may be helpful in determining whether the trial court exercised its discretion in a principled fashion[;] however, they are not binding on this court." *Communicon, Ltd. v. Guy Brown Fire & Safety, Inc.*, No. 02-17-00330-CV, 2018 WL 1414837, at *6 (Tex. App.—Fort Worth Mar. 22, 2018, no pet.) (mem. op.).

Because the temporary injunction only preserves the status quo pending final trial, the trial court's determination regarding whether to issue the temporary injunction does not resolve the ultimate merits of the suit. *Brooks v. Expo Chem. Co.*, 576 S.W.2d 369, 370 (Tex. 1979). The assumption is that the evidence may well change between the preliminary temporary-injunction stage of the proceeding and a final trial on the merits. *Burgess v. Denton C[n]ty.*, 359 S.W.3d 351, 359 n.35 (Tex. App.—Fort Worth 2012, no pet.) (citing *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978)). Thus, the probability-of-success requirement does not require an applicant to show that it will prevail at final trial. [*Young Gi*]

*Kim v. [Ick Soo] Oh*, No. 05-19-00947-CV, 2020 WL 2315854, at *2 (Tex. App.—Dallas May 11, 2020, no pet.) (mem. op.). The requirement goes no further than necessitating that "the applicant [ ] present enough evidence to raise a bona fide issue as to its right to ultimate relief." *Id.*

*Hernandez v. Combined Ins. Co. of Am.*, No. 02-20-00225-CV, 2021 WL 520456, at *5–6 (Tex. App.—Fort Worth Feb. 11, 2021, pet. denied) (mem. op.).

**B.      We overrule Williams's first issue that there is an absence of proof that NE would suffer an imminent and irreparable injury or harm should an injunction not issue.**

As with many of the issues that Williams raises, we struggle to discern his actual complaint under his first issue. Williams prefaces this issue with a citation to Texas Rule of Civil Procedure 683, which requires a temporary-injunction order to specify why the applicant for the injunction will suffer irreparable harm if the injunction is not issued—thus indicating that he might attack the form of the injunction order. *See* Tex. R. Civ. P. 683. But Williams then ignores the terms of the amended temporary-injunction order and makes no argument that its terms fail to meet Rule 683's requirements. His argument pivots to one that the proof fails to show that NE will suffer an imminent, irreparable injury should the injunction not issue. We, however, view the evidence as establishing the necessary showings.

Though Williams does not actually challenge the form of the amended temporary-injunction order, we conclude that it is adequate. With respect to the form of a temporary-injunction order, our prior opinion in this matter stated that

> Rule 683 requires, among other things, that every order granting an injunction "shall set forth the reasons for its issuance" and "shall be

13

specific in terms." Tex. R. Civ. P. 683. Rule 683 also requires that a temporary-injunction order state precisely why the applicant would suffer irreparable injury in the absence of an injunction preserving the status quo pending a trial on the merits. *Home Asset*[*, Inc. v. MPT of Victory Lakes Fcer, LLC*, No. 01-22-00441-CV], 2023 WL 3183322, at *2 [(Tex. App.—Houston [1st Dist.] May 2, 2023, no pet.) (mem. op.)]; *SISU Energy*[*, LLC v. Hartman*, No. 02-19-00436-CV], 2020 WL 4006725, at *14 [(Tex. App.—Fort Worth July 16, 2020, no pet.) (mem. op.)]. Even when a lawsuit relates to real estate in some fashion, the trial court is not excused from Rule 683's mandate that a temporary-injunction order explain why irreparable harm will result without an injunction. *Home Asset*, 2023 WL 3183322, at *4. An unsupported or conclusory statement in the order that irreparable harm would occur is insufficient to satisfy Rule 683. *Home Asset*, 2023 WL 3183322, at *2; *SISU Energy*, 2020 WL 4006725, at *14.

*Williams*, 2023 WL 4781174, at *2.

Here, the trial court's amended temporary-injunction order goes into detail stating its basis for the conclusion that the potential for irreparable harm exists:

**Irreparable Harm**

"It is well established law that each and every piece of real estate is unique["];] thus, losing a real property interest could result in irreparable harm that could not be remedied by monetary damages. *Greater Hous. Bank v. Conte*, 641 S.W.2d 407, 410 (Tex. App.—Houston [14th Dist.] 1982, no writ) (upholding a temporary injunction preventing Greater Houston Bank from selling certain real property based on the impending irreparable loss of real property). [Appellants] promised to convey certain real property to [NE] in satisfaction of the debt created by the misappropriation of funds. The property would only be conveyed back to [Appellants] if [Appellants] repaid the funds by February 28[], 2023, the established Due Date. This contract created a future interest in the properties that vested on February 28[], 2023, due to the stipulated failure to repay [NE]. This [c]ourt finds that the loss of this property would cause irreparable harm to [NE] and that enjoining [Appellants] from transferring or otherwise disposing of the property is necessary to prevent this injury.

14

[Appellants] have attempted to differentiate this matter from Texas jurisprudence pertaining to the uniqueness of real property by emphasizing that the properties were only being used as collateral for a monetary debt. However, as stated above, it is plainly evident that the gravamen of [NE's] claim pertains to its vested interest in real property due to [Appellants'] failure to repay the misappropriated funds.

The standard that must be met by the form of a temporary-injunction order is that the "reasons for granting a temporary injunction must be specific and legally sufficient on its face and not merely conclusory." *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 744 (Tex. App.—Dallas 2011, no pet.) (citing Tex. R. Civ. P. 683). The amended temporary-injunction order is not conclusory, and Williams makes no argument that it is legally insufficient.

With respect to the attacks on the evidence supporting the finding of irreparable harm—if we understand Williams's argument under his first issue—Williams appears to argue that there was no threat of an imminent injury because a concern about whether the condos would be sold had developed over time and not just in the two weeks before the temporary-injunction hearing. If Williams's argument is that NE was dilatory in seeking injunction relief, Williams cites no authority depriving the trial court of discretion to determine whether NE had waited too long or that establishes as a matter of law that NE had waited too long. *See El Paso Dev. Co. v. Berryman*, 729 S.W.2d 883, 888 (Tex. App.—Corpus Christi–Edinburg 1987, no writ) ("The trial court heard this testimony [regarding whether a claim was barred by laches] and had discretion to consider it or not.").

15

Further, NE's concern—that there was an imminent threat that Williams would act in derogation of NE's rights in the condos—was justified by the amended temporary-injunction order's recitation of the fact that two of the condos listed in the Amendment had been sold. Harm is imminent for purposes of a temporary injunction when the commission of an act is more than speculative and the injury that may flow from the act is more than conjectural. *Hotze v. Hotze*, No. 01-18-00039-CV, 2018 WL 3431587, at *4 (Tex. App.—Houston [1st Dist.] July 17, 2018, no pet.) (mem. op.) (citing *Camp Mystic, Inc. v. Eastland*, 399 S.W.3d 266, 276 (Tex. App.—San Antonio 2012, no pet.)). The trial court incorporated the act of selling the condos in its grounds for issuing the injunction by noting in the order's conclusion that "[b]ecause [NE] seeks specific performance of the above properties, has shown that they have no alternative to secure a pecuniary judgment, and [Appellants] had sold some of the property in dispute after notice of this cause of action, the [c]ourt shall enter this [t]emporary [i]njunction." Thus, we cannot say that proof of an imminent injury was lacking in view of Williams's acts in derogation of the contractual commitments that he made in the Amendment.

Williams's second argument is apparently that NE's suit is not predicated on the recovery of real estate but that it is merely a debt-collection suit. He argues that "NE did not seek the condominiums because they were unique pieces of real estate; rather, it wanted them as collateral to ensure prompt payment of an unspecified obligation (and to be forfeited if such obligation was not fully paid by February 24,

16

2022)." But Williams never attacks the trial court's conclusion that "[t]his contract created a future interest in the properties that vested on February 28[], 2023, due to the stipulated failure to repay [NE]." It is not our role to brief this issue for Williams regarding whether this conclusion is correct or not. *See Sister Initiative, LLC v. Broughton Maint. Ass'n*, No. 02-19-00102-CV, 2020 WL 726785, at *25 (Tex. App.—Fort Worth Feb. 13, 2020, pet. denied) (mem. op.).

We overrule Williams's first issue.

## C. We overrule Williams's second issue that there is an absence of a showing of a probable right of recovery on NE's claim for breach of the Amendment because the Amendment lacks consideration.

In his second issue, Williams contends that the Amendment is not supported by consideration; we reject his contention. As we have noted, we review the trial court's determination that NE demonstrated a probable right to recovery under a liberal standard of review. *See Hernandez*, 2021 WL 520456, at *5–6. At this point in the litigation, a host of arguments supports a preliminary determination that the Amendment was supported by consideration.

In general terms,

> "Consideration consists of either a benefit to the promisor or a detriment to the promisee." [*WCW Int'l, Inc. v. Broussard*, Nos. 14-12-00940-CV, 14-12-01077-CV, 14-12-01139-CV, 2014 WL 2700892, at *9 (Tex. App.—Houston [1st Dist.] June 3, 2014, pet. denied) (sub. mem. op.)]. It is a present exchange bargained for in return for a promise. *Id.* It may consist of some right, interest, or profit, or benefit that accrues to one party or of some forbearance, loss, or responsibility that is undertaken or incurred by the other party." *Id.*

17

*Katy Int'l, Inc. v. Jinchun Jiang*, 451 S.W.3d 74, 85 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Here, the Amendment is in writing. It also contains the following recital: "In consideration of the foregoing, the mutual agreements contained herein, and other good and valuable consideration . . . ." The recital of consideration creates a presumption that the contract was supported by consideration, and Williams bore the burden to show that the contract lacked consideration. *See TLC Hosp., LLC v. Pillar Income Asset Mgmt., Inc.*, 570 S.W.3d 749, 761 (Tex. App.—Tyler 2018, pet. denied).

Williams argues that he rebutted the presumption because certain of the promises that allegedly constituted consideration were based on parol evidence. He argues that "the [c]ourt must determine and enforce the parties' intent as expressed within the four corners of the written agreement." Williams paints with too broad a brush. For example, he argues that consideration in the form of a promise—that he "would be given an opportunity to extend the time for payment of the money rather than us suing them on the spot"—is not some evidence of consideration.

Williams fails to acknowledge that parol evidence of consideration consistent with the terms of an agreement may be considered:

> The parol evidence rule does not bar evidence of a consistent collateral agreement. *Ledig v. Duke Energy Corp.*, 193 S.W.3d 167, 179 n.10 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Thus, parol evidence may be used to clarify or explain the agreement. *Tex. Builders v. Keller*, 928 S.W.2d 479, 481 (Tex. 1996). In addition, we may consider parol evidence "'to show want or failure of consideration[] and to establish the real consideration given for an instrument.'" *Audubon* [*Indem. Co. v.*

18

*Custom Site-Prep, Inc.*], 358 S.W.3d [309,] 316 [(Tex. App.—Houston [1st Dist.] 2011, pet. denied)] (quoting *DeLuca v. Munzel*, 673 S.W.2d 373, 376 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)); *see McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 335 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("[P]arol evidence is admissible to show want or failure of consideration and establish the actual consideration given for the instrument."). Thus, we may consider parol evidence "to determine if consideration exists even though the parties have reduced their agreement to a writing which appears to be a completely integrated agreement." *Audubon*, 358 S.W.3d at 316 (internal quotations and citations omitted).

*Lopez v. Rivas*, No. 01-14-00592-CV, 2015 WL 1967594, at *3 (Tex. App.—Houston [1st Dist.] Apr. 30, 2015, no pet.) (mem. op.). For example, in the context of a summary-judgment motion, the San Antonio Court of Appeals considered evidence of consideration in the form of a parol agreement to forbear filing suit. *See In re Estate of Childs*, No. 04-15-00623-CV, 2016 WL 3452624, at *3 (Tex. App.—San Antonio June 22, 2016, no pet.) (mem. op. on reh'g). Here, an agreement to forbear filing suit is consistent with Williams's promise to repay the funds that he acknowledged in the Amendment that he had diverted to his personal use. This evidence in combination with the presumption that a written agreement is supported by consideration is sufficient to support a preliminary conclusion that the Amendment was supported by consideration and that NE had shown a probable right to recovery on its breach-of-contract claim.

Further, the terms within the four corners of the Amendment demonstrate the existence of consideration. One essence of the Amendment was that Williams would repay money that he had wrongfully diverted to his own uses. Decades ago, the

Amarillo Court of Appeals noted that a promise to return money wrongfully

appropriated was a promise supported by consideration:

> The record reveals conclusively that appellant wrongfully obtained and appropriated money that belonged to appellee and that appellee charged him of so doing.  In a similar case of *Largent v. Beard*, . . . 53 S.W. 90, 92[ (Tex. App.—Dallas 1899, no writ)], the court held that a threat to prosecute a person which threat induced him to sign a note constituted duress.  But the court further held that ["a]lthough duress may have existed, yet if, as a matter of fact, defendant had appropriated proper[ty] belonging to plaintiff, and executed the note in settlement therefor, though induced so to do by the threat of prosecution, he would be liable thereon to the extent of the value of the property so taken.["]  Such a rule is recognized by the court in the case of *Thompson v. Hicks*, . . . 100 S.W. 357[ (Tex. App.—Austin 1907, no writ)].  *It is our opinion that the foregoing authorities directly support appellee's contention in this case to the effect that there was a valid consideration for the execution of the note and that such was a valid obligation* although duress existed.

*Prigmore v. Hardware Mut. Ins. Co. of Minn.*, 225 S.W.2d 897, 899–900 (Tex. App.—

Amarillo 1949, no writ) (emphasis added).

Indeed, the facts set out in the Amendment would support a claim against

Williams for money had and received.  To establish a claim for money had and

received, "a plaintiff must show that a defendant holds money which in equity and

good conscience belongs to him."  *Edwards v. Mid-Continent Off. Distribs., L.P.*, 252

S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied).  Such a claim is a species of

unjust enrichment and implies a contract to return the money:

> The claim "belongs conceptually to the doctrine of unjust enrichment." *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ).  The doctrine of unjust enrichment applies the principles of restitution to disputes that are not governed by a contract between the parties.  *Id.*  It characterizes the result of a failure to make restitution

under circumstances that give rise to an implied or quasi-contractual obligation to return those benefits. *Id.*

*Id.* (footnote omitted). It is incongruous to argue that the law creates an implied contract to return money under the circumstances alleged against Williams in this case but that an explicit promise to return the monies lacks consideration. Williams does not acknowledge that a promise to return wrongfully appropriated money is supported by consideration and thus offers no rationale for why the trial court could not conclude that the promise supplied consideration for the Amendment's promises.

In addition, how much money Williams misappropriated was unliquidated, and the Amendment was a means of quantifying that amount. A contractual mechanism to quantify an unliquidated claim is an accord and satisfaction that provides consideration for a contract:

> Texas law is clear that a "good[-]faith dispute as to liability on either a liquidated or unliquidated claim furnishes sufficient consideration for an accord and satisfaction," and the satisfaction is the "actual performance of the new agreement." *Hycarbex, Inc.*[ *v. Anglo-Suisse, Inc.*], 927 S.W.2d [103,] 110 [(Tex. App.—Houston [14th Dist.] 1996, no writ)]; *Ind. Lumbermen's Mut. Ins. Co.*[ *v. State*], 1 S.W.3d [264,] 266 [(Tex. App.—Fort Worth 1999, pet. denied)]. In determining whether an accord and satisfaction is supported by consideration, "it is not necessary to resolve the parties' underlying dispute." *Hycarbex, Inc.*, 927 S.W.2d at 110. Rather, consideration "is found in the resolution of the uncertainty which exists as to the validity or the amount of a claim" and "the very existence of the dispute is the consideration for the accord and satisfaction." *Id.*

*Case Funding Network, L.P. v. Anglo-Dutch Petroleum Int'l, Inc.*, 264 S.W.3d 38, 55 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Thus, the Amendment's mechanism to

21

quantify the unliquidated amount misappropriated by Williams is another aspect of the contract showing that there was consideration for Williams's promises.

Finally, NE argues that there was consideration because "[a] commitment to continue to do business is sufficient consideration." Indeed, the Amendment references the original proposal for procurement services and concludes with a provision that

> [e]xcept as set forth herein, the Agreement [defined in the Amendment as the proposal] shall remain in full force and effect provided that no further fees shall be payable by NE to CIP and any and all payments made or to be made by NE shall be made directly to vendors and not to CIP.

As NE notes, "an agreement to continue doing business with a party confers a benefit on that party." *Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 185 (Tex. App.—Fort Worth 1995, no writ).

NE explains as follows how the principle that an agreement to continue doing business applies to the Amendment:

> In the drafting of the First Amendment, the parties contemplated continuation of the completion of the original project under the original Agreement. [NE] had a legal right to end its obligation under the original Agreement to allow CIP to continue to perform work on the project since Williams and CIP had breached the Agreement by retaining [NE's] funds meant to be used on the project and misappropriating funds for purposes unrelated to the project. [NE] allowed CIP to continue to work on the project in light of the First Amendment, which provided [Appellants] would convey the condominiums. [NE] allowed CIP to continue its work as long as [Appellants] were making good[-] faith efforts to comply with their obligations to convey the condominiums. [NE] did not bring suit until [Appellants] suddenly

22

refuse[d] to continue with the conveyance. The agreement to continue to do business constitutes consideration. [Record references omitted.]

The only response that Williams musters to challenge the principle invoked by NE is in his reply brief in which he states, "This may be, but no such commitment is found in the Amendments." The term of the Amendment that we have quoted counters Williams's statement.

The trial court did not abuse its discretion by concluding that NE had shown a probable right to recovery on its breach-of-contract claim. We have enumerated a number of bases that support a view at this preliminary stage of the litigation that consideration supported the Amendment's promises.

We overrule Williams's second issue.

### D. We overrule Williams's third issue that the Amendment does not bind him because he was not a party to the Agreement that was amended.

In his third issue, Williams makes an argument, which we construe as arguing that the trial court abused its discretion by issuing the amended temporary injunction because the document termed "Amendment" is invalid since the parties to it were not parties to the contract allegedly amended. We reject this contention.

Williams argues,

In this case, the Amendments purport to modify and add to a "Proposal for OFCI, FF&E, and OS&E Procurement Services" ("the Proposal") between PSI and NE. *But PSI is not a party to the Amendments, and [Williams], [Michael,] and CIP are not parties to the Proposal. Since there is no identity of parties, the Amendments do not modify or improve upon the Proposal.* [Emphasis added.] [Record reference omitted.]

23

Williams's argument turns a blind eye to the provision of the Amendment that states that CIP stepped into PSI's shoes:

> NE and Purchasing Solutions International, Inc. ("PSI") entered into that certain "Proposal for OFCI, FF&E[,] and OS&E Procurement Services" ("Agreement") on or about February 23, 2018. *On or about December 30, 2020, CIP notified NE that it owned the interest of PSI in the Agreement through a name change of PSI.* [Emphasis added.]

Further, CIP is described "as successor in interest to" PSI.

These provisions state that the party signing the Amendment owned an interest in the original contract "through a name change of PSI" and explicitly state that CIP is a successor to the original party. *See Zbranek Custom Homes, Ltd. v. Allbaugh*, No. 03-14-00131-CV, 2015 WL 9436630, at *4 (Tex. App.—Austin Dec. 23, 2015, pet. denied) (op. on reh'g) (not designated for publication) ("The term 'successor' means, in the context of a business entity, another entity that becomes invested with the rights and assumes the burdens of the first entity by either amalgamation, consolidation, or duly authorized legal succession."). How a party explicitly stating that it holds the status of a successor can straight-facedly argue that the successor lacks the power to enter into the Amendment is unexplained.

Further, we reject an argument that Williams cannot be bound by the document because it is termed an Amendment to the Proposal to which he was not a party. As we have noted, Williams explicitly confessed in the Amendment that he had improperly used funds paid by NE for his personal expenses. He made a joint-and-

24

several promise, along with CIP, to repay the funds that he diverted to his personal use. How that freestanding promise to repay funds, which he acknowledged that he had put to his personal use, does not bind him because he was not a party to the Proposal is another argument that Williams's brief fails to explain.

We overrule Williams's third issue.

### E. We overrule Williams's fourth issue that the Amendment's recitation that CIP is a successor to PSI cannot be credited.

In his fourth issue, Williams argues that the trial court could not conclude that the Amendment was a valid contract because there is "no evidence" that CIP is a successor to PSI. In essence, this argument again asks us to put out of our mind that the Amendment recited that CIP is a successor to PSI and that "CIP notified NE that it owned the interest of PSI in the Agreement through a name change of PSI."

Now Williams argues that CIP and PSI cannot be the same company because we cannot credit the quoted recitations since Williams is not a lawyer; "[a]s demonstrated by [his] Exhibit 2 and Exhibit 3, PSI is a currently existing entity[;] and [NE's in-house counsel] admitted that he is unaware of any document by which PSI (or the bankruptcy trustee acting for PSI) transferred, assigned, or conveyed any rights or interests to CIP." [Record references omitted.] Williams's argument is no more than that there may be a fact question regarding whether the recitations in the Amendment are correct because they are seemingly rebutted by other evidence. The Amendment's recitation is sufficient to support the trial court's exercise of its

discretion to issue a temporary injunction that CIP was a successor to PSI and had the power to amend the Proposal because it "present[s] enough evidence to raise a *bona fide* issue as to its right to ultimate relief." *See Hernandez*, 2021 WL 520456, at *6.

We overrule Williams's fourth issue.

### F. We do not reach Williams's fifth issue claiming that NE failed to establish a probable right of recovery for its claim under the Texas Theft Liability Act.

In his fifth issue, Williams argues that the trial court erred in predicating a temporary injunction on NE's cause of action under the Texas Theft Liability Act because NE failed to plead and prove a viable claim under that Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001–.005. The amended temporary-injunction order makes no mention of a cause of action under the Theft Liability Act as a cause of action for which NE has a probable right of recovery nor as a basis for injunctive relief. Because the Theft Liability Act claim is not a basis for the injunction, we have no need to discuss whether the evidence indicates one way or another whether NE has a viable claim against Williams under the Act. *See Contract Datascan Holdings, Inc. v. Retail Servs. WIS Corp.*, No. 02-23-00153-CV, 2023 WL 7851509, at *28 (Tex. App.—Fort Worth Nov. 16, 2023, no pet.) (mem. op.) ("Because it is unclear that the trial court even considered the tortious-interference claim attacked by Datascan in the present subissue as a basis for the temporary injunction, we will not further lengthen this opinion by prejudging whether the cause of action has any validity.").

We overrule Williams's fifth issue.

**G. We do not reach Williams's sixth issue claiming that NE failed to establish a probable right to recovery for its conversion claim.**

In his sixth issue, Williams makes the same basic argument that he made in support of his fifth issue—this time arguing that NE failed to plead and prove a viable conversion claim against Williams. Again, the trial court did not predicate injunctive relief on a finding that NE had a probable right of recovery against Williams on a conversion claim. Thus, we will not review the question of the viability of the conversion claim as part of this interlocutory appeal from the amended temporary-injunction order.

We overrule Williams's sixth issue.

**H. Williams has waived his seventh issue.**

The entirety of Williams's argument under his seventh issue is as follows: "As noted above, there is no valid, enforceable contract between NE and [Williams], personally. Accordingly, there is no contract that [Williams] could have breached. Williams has waived this issue with an argument that is devoid of authority and citations to the record. *See Stewart v. Tex. Farmers Ins. Co.*, No. 02-23-00041-CV, 2023 WL 6300726, at *4 n.12 (Tex. App.—Fort Worth Sept. 28, 2023, no pet.) (mem. op.). Further, we have already rejected arguments that the Amendment is not supported by consideration or that Williams was not properly a party to it.

We overrule Williams's seventh issue.

27

## I.     **Williams has waived his eighth issue.**

The entirety of Williams's argument under his eighth issue is one sentence, stating, "Given the absence of relevant evidence and the fact that [Williams], personally, was not a party to the supposedly amended PSI Proposal, NE does not have a probable right to the relief sought against [Williams] and is not entitled to a temporary injunction." [Record reference omitted.] Williams has again waived his issue by setting forth an argument devoid of authority and citations to the record. *See id.* Further, Williams obviously is a party to the Amendment, which is the crux of NE's claims.

We overrule Williams's eighth issue.

## J.     **Williams has waived his ninth issue.**

Next, we deal with an issue in which the extent of the argument is as follows:

> Beyond mere speculation, NE offered no evidence whatsoever that it would probably sustain injury in the absence of a temporary injunction.
>
> Lacking proof of this required element, NE is not entitled to a temporary injunction.

The issue is waived. *See id.* To the extent that the issue is briefed in other issues, we will address it in the context of the discussion of the other issues.

We overrule Williams's ninth issue.

**K.     We overrule Williams's tenth issue that there is an absence of a showing of an imminent threat of injury.**

In his tenth issue, Williams raises exactly the same issue and cites the same testimony that he cited in his first issue and claims that there was no imminent threat of injury to NE that warranted injunctive relief.  Williams cites no new authority in this issue—and, indeed, cites no authority at all.  Williams's purpose in rehashing the same argument raised in a prior issue is unknown.

Williams does expand on his argument under his tenth issue in Appellants' joint reply brief.  Again, he cites no authority but argues that the trial court did not properly weigh the evidence.  We will simply quote his argument:

> To support its argument that the evidence demonstrates that the contemplated injury is imminent, NE states that "[Appellants sold two of the condominiums] despite the fact that [NE] filed this lawsuit to recover the condominiums and the trial court entered a temporary restraining order and temporary injunction prohibiting the sale of the condominiums."  This assertion is, at best, misleading.
>
> The temporary restraining order and first temporary injunction were entered on February 17 and March 13, 2023, respectively. Although Unit 501 is listed in these orders, Appellants did not own this unit in February or March 2023, having sold it in November 2022. Further, when these original injunctive orders were entered, Unit PH2 was under contract to be sold, and Appellants feared they would be sued by the Buyer if they failed to honor the agreement.  Faced with an untenable choice, they elected to honor the sales contract and sold the unit.
>
> Although Unit 501 and Unit PH2 are included in the Amended Temporary Injunction, Appellants did not own these condominiums on August 14, 2023, when this order . . . was entered.

The foregoing facts do not support a finding of imminent injury. To the contrary, they disprove it. NE would have the [c]ourt believe that [Williams] and [Michael] sold Units 501 and PH2 to prevent them from falling into the hands of NE to effectively thwart any subsequent collection efforts, thereby suggesting that it faced an imminent injury.

NE fails to mention that, as a show of good faith, *Appellants* offered, and NE accepted, a Rule 11 agreement[,] which made the newly acquired Unit 610 subject to the injunction. The fact that Appellants proposed and voluntarily agreed to the Rule 11 agreement counters the notion that Appellants have been aggressively attempting to sell condominiums to place them beyond the reach of creditors. Obviously, if Appellants truly intended to hinder, delay, or defraud creditors by selling Units 501 and PH2, they would not have suggested and entered into the Rule 11 agreement.

It also must be noted that Appellants were not under an injunction when Unit 501 was sold in November 2022, nor were they under a valid injunction in March 2023 when they sold Unit PH2. [Record references and footnote omitted.]

In essence, the quote shows that the trial court had evidence that Williams had sold some of the properties that were subject to the Amendment and offers excuses for the conduct that breached the Amendment and was calculated to deprive NE of the interest that the trial court had concluded that NE had in the condos. How this reveals an abuse of discretion in the trial court's issuance of a temporary injunction is unclear.

Williams then argues that no adverse conclusion can be drawn from his conduct because of the offer of the Rule 11 agreement—an agreement that Williams told the trial court at the amended temporary-injunction order hearing was "gone," meaning that "[t]here is no Rule 11 [a]greement." Thus, how the existence of a

30

Rule 11 agreement that Williams no longer stood by demonstrates an abuse of discretion in the trial court's conclusion that Williams might well sell the remaining condo that was subject to the injunction is another conclusion that is left unexplained.

We overrule Williams's tenth issue.

**L.    We overrule Williams's eleventh issue asserting that there is no showing of an irreparable injury from a transfer of the condos because NE elected to seek only monetary relief.**

Williams's eleventh issue, as we understand it, is that NE has not shown an irreparable injury because it is seeking monetary relief and not the recovery of property. We disagree.

First, this argument—like Williams's prior ones—ignores the provision of the amended temporary-injunction order that NE has a specific interest in the condos that is in jeopardy:

> This contract created a future interest in the properties that vested on February 28[], 2023, due to the stipulated failure to repay [NE]. This [c]ourt finds that the loss of this property would cause irreparable harm to [NE] and that enjoining [Appellants] from transferring or otherwise disposing of the property is necessary to prevent this injury.

Then, Williams contends that NE is seeking inconsistent remedies by suing on a debt and also seeking to enforce its rights in the condos. Again, we will not try to summarize the arguments but quote them verbatim from Williams's brief:

> As shown by its pleadings, NE is seeking inconsistent, mutually exclusive relief. On one hand, NE asks the [c]ourt to grant it an award of $3.6 million in monetary damages; on the other, NE asks the [c]ourt for Mexican condos. As a matter of law, Texas litigants are not entitled to double recovery, yet this is exactly what NE is requesting. A party is

31

entitled to seek damages on alternative theories but is not entitled to recover on both theories; to do so is considered equivalent to a double recovery. *Waite Hill Serv*[*s.*]*, Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184–85 (Tex. 1998).

A temporary injunction is an intermediate remedy but, like a final judgment, it is the type of remedy that compels the applicant to make a choice that precludes double recovery. Accordingly, it is incumbent upon NE to make an election of remedies: either it seeks to recover money, or it is asking for the Mexican condos, but *it cannot have both.*

As a practical matter, NE has made its election: it seeks to recover money, as demonstrated by its offer to reconvey the condos upon receipt of payment. By this *de facto* election of remedies, NE has confirmed that the true subject of this suit is money, not Mexican real estate. [Record references omitted.]

If an election is ever required of NE, we hold that the time for NE to make an election has not yet passed. "The election doctrine may constitute a bar to relief when '(1) one successfully exercises an informed choice (2) between two or more remedies, rights or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice.'" *City of Glenn Heights v. Sheffield Dev. Co.*, 55 S.W.3d 158, 164 (Tex. App.—Dallas 2001, pet. denied). But Williams's argument is at odds with the principle that a party may plead alternative remedies and that an election of remedies usually occurs at judgment:

[C]ases on the election[-]of[-]remedies doctrine reflect that an election between remedies occurs, at the latest, when a party proceeds to final judgment on one claim with knowledge of an inconsistent claim or remedy. This is bolstered by the fact that Texas law allows a party to assert inconsistent theories and facts in the alternative. "One may, for example, plead alternative and inconsistent facts without being barred." *Bocanegra*[ *v. Aetna Life Ins. Co.*], 605 S.W.2d [848,] 851–52 [(Tex. 1980)] (citations omitted). It is the act of obtaining judgment on one theory or

state of facts that precludes the ability to pursue other inconsistent remedies. *See id.* at 853[; *s*]*ee also, e.g.*, *B.L. Nelson & Assocs., Inc. v. City of Argyle*, 535 S.W.2d 906, 910 (Tex. [ ] App.—Fort Worth 1976, writ ref'd n.r.e.) ("The prosecution of a suit to judgment is undoubtedly an election to pursue the remedy sought in that suit."[] (citing *Cantu v. Bage*, 467 S.W.2d 680 (Tex. [ ] App.—Beaumont 1971, no writ))[)]; *City of San Antonio v. Terrill*, 501 S.W.2d 394, 399–400 (Tex. [ ] App.—San Antonio 1973, writ ref'd n.r.e.) ("If one having the right to pursue one of several inconsistent remedies makes his election, institutes suit, and prosecutes it to final judgment[,] . . . such election constitutes an estoppel thereafter to pursue another inconsistent remedy.").

*Id.* at 165. At some point, NE may have to opt between a recovery of the condos and a monetary judgment; we express no opinion on that issue. But how that election has either occurred or is required to be made by NE before judgment is another matter that Williams does not explain. Further, Williams does not address how an election would bind NE to pursue only the condos if their values were not sufficient to repay NE the funds that Williams diverted to his personal use and which he promised to repay—another issue undetermined at this stage.

In his reply brief, Williams argues under the present issue that there can be no irreparable injury because NE has not shown that he cannot respond in damages. As with all of his other arguments, this turns a blind eye to the trial court's finding that NE has an interest in the remaining condo subject to the Amendment.

Williams's argument also turns a blind eye to the inference created by Williams's conduct in conveying the condos. For example, the Dallas Court of Appeals recently rejected a similar argument in which a party argued that an injunction

33

prohibiting it from transferring property was unwarranted because there was no proof that it lacked the ability to respond in damages:

> Viewed in the light most favorable to the trial court's order, the evidence that appellants are selling assets and evading financial obligations supports a reasonable inference of a deteriorating financial condition that would affect appellants' ability to fully satisfy a money judgment based on [appellee's] losses, which continue to increase. *See Hartford Fire Ins. Co. v. 3i Constr., LLC*, No. 3:16-CV-00992-M, 2017 WL 3209522, at *4 (N.D. Tex. May 18, 2017) [(order)] (concluding "[the surety's] concern that it will suffer irreparable harm because the Indemnitors did not respond to the demand letter or pay its subcontractors is not speculative; it supports a conclusion that the Indemnitors are disposing of assets or lack the ability to pay a judgment if one is entered against them"). Thus, the record contains some evidence of a threatened injury. *Id.* We conclude the trial court did not abuse its discretion by determining [appellee] demonstrated irreparable injury. *See Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 477–78 (Tex. App.—Dallas 2010, no pet.) [(op. on reh'g)] ("If some evidence reasonably supports the trial court's decision, the trial court does not abuse its discretion.").

*31 Holdings I, LLC v. Argonaut Ins. Co.*, 640 S.W.3d 915, 927 (Tex. App.—Dallas 2022, no pet.). There is evidence that Williams is also attempting to evade his agreement and has admitted selling certain of the condos that were subject to the Amendment. This evidence, in combination with his prior diversion of funds, throws into question his ability to respond in damages.

We overrule Williams's eleventh issue.

**M.** **We sustain Williams's twelfth issue that the amended temporary-injunction order improperly included a condominium not referenced in the Amendment.**

In his twelfth issue, Williams argues that the trial court erred by restraining the sale of a condominium not listed in the Amendment but which was apparently

34

purchased with funds derived from the sale of a condominium that was included in the Amendment. Williams phrases his issue in terms that the injunction is actually an improper prejudgment attachment but also notes that NE "has not filed pleadings requesting an attachment nor has NE provided facts and evidence required to obtain such relief." Construing the issue as "covering every subsidiary question that is fairly included," we view the issue as raising the question that the trial court issued a temporary injunction for a cause of action not supported by NE's pleading nor one mentioned in its order and urging that we should dissolve the temporary injunction as to the condominium in question on that basis. *See* Tex. R. App. P. 38.1(f). We agree.

We have quoted the terms of the trial court's amended temporary-injunction order by which it concluded that NE had established a probable right of recovery based on specific performance of the Amendment. But the trial court also enjoined the conveyance of Unit 610, which is a property in which the Amendment creates no rights because it is not mentioned in the Amendment. The amended temporary-injunction order discusses how Unit 610 became part of the controversy as follows:

> On July 26[], 2023, [NE] informed this [c]ourt that in November 2022, Williams and Michael [had] sold the condominium identified in the First Amendment as Pilitas 177, Unit 501, Puerto Vallarta, Jalisco, Mexico. Counsel for Defendants admitted that the sale occurred. [NE] also informed the [c]ourt that in March 2023, [Appellants had] sold the condominium identified as Barra de Navidad 1230, Unit PH2, and [had] used the proceeds from the sale to purchase a new condominium identified as Aquiles Serdan 195T, Unit 610, Puerto Vallarta, Jalisco, Mexico. Once again, [c]ounsel for Defendants agreed with this assertion. Because the proceeds from the sale of one of the condominiums were used to purchase a new one, [NE] requests that

35

[Appellants] Michael and Williams be enjoined from conveying the remaining property sought under the Amendment and substitute the new condominium for the properties no longer in [Appellants'] control.

The flaw that we see in this amended temporary-injunction order is that NE did file a supplemental application for temporary injunction that references Unit 610, but the only petition alleging a cause of action against Appellants that is included in the clerk's record is NE's original petition that neither alleged a cause of action that gave NE an interest in Unit 610 nor in any condo that was not listed in the Amendment. Further, NE defends the inclusion of Unit 610 in the amended temporary-injunction order by arguing in its brief that the unit is subject to a constructive trust and that the unit was purchased by means of a fraudulent transfer. But those causes of action are unpleaded in its original petition and not even mentioned in its supplemental application for temporary injunction. Instead, the supplemental application references only a Rule 11 agreement that made Unit 610 subject to the amended temporary-injunction order that we dissolved in our prior opinion:

> The Rule 11 [a]greement proposed by counsel for [Appellants] is attached hereto as Exhibit B. The new condominium identified in the Rule 11 as Unit 610, as well as the three condominiums identified above, which were set forth in the Original Application, and restrained from conveyance in the Temporary Injunction, are collectively referred to herein as the "**Condominiums**."

As noted above, Williams told the trial court that the Rule 11 agreement was of no force and effect when the previous injunction order was dissolved, and the Rule 11

36

agreement is not mentioned as a basis for the present temporary-injunction order. The fact that the Rule 11 agreement became a nullity after our dissolution of the prior injunction order is borne out by the terms of the agreement as it states only that Unit 610 "is subject to the Temporary Injunction issued in this cause on March 13, 2023."

Thus, we face a situation in which the trial court found a probable right of recovery on a cause of action that does not embrace a right to Unit 610, and the cause of action that NE claims gives it a right in that unit is unpleaded. Further, the Rule 11 agreement that mentions the unit is not mentioned in the present temporary-injunction order, and that agreement's effectiveness is tied to an injunction order that was dissolved.

Two reasons render the present injunction order's restraints on Unit 610 invalid. Simply, "[t]o establish a probable right to the relief sought, an applicant is required to allege a cause of action and offer evidence that tends to support the right to recover on the merits." *Dall. Anesthesiology Assocs. v. Tex. Anesthesia Grp.*, 190 S.W.3d 891, 896–97 (Tex. App.—Dallas 2006, no pet.). NE has not pleaded the cause of action that it claims gives it a right in Unit 610.

Beyond this failing, the present injunction order itself references no cause of action supporting a claim that NE has a probable right of recovery that creates an interest in Unit 610. The trial court references performance of the Amendment, but that agreement does not vest a right in NE for Unit 610. The Dallas Court of Appeals recently noted that for an injunction to validly restrain a conveyance of

37

property based on an agreement creating rights in the property, the agreement must actually create a right in the property subject to the injunction:

> [An] ancient and controlling rule forecloses resort to injunctive relief simply to sequester a source of funds to satisfy a future judgment. That general rule would not control where there is a logical and justifiable connection between the claims alleged and the acts sought to be enjoined, or where the plaintiff claims a specific contractual or equitable interest in the assets it seeks to freeze. *See, e.g.*, [*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 310, 119 S. Ct. 1961, 1964 (1999)]; *Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 527 S.W.3d 579, 587 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (drilling equipment that was subject of [appellee's] request for injunction was equipment it [had] purchased and returned to [appellant] and for which [appellant had] failed to give credit, and could be used to mitigate [appellee's] claims related to its purchase of those items).

*RWI Constr., Inc. v. Comerica Bank*, 583 S.W.3d 269, 277 (Tex. App.—Dallas 2019, no pet.). The line between the dots required by *RWI* is missing with respect to Unit 610 in the absence of a pleaded cause of action that creates an interest in NE or a reference to a cause of action in the present injunction order that creates such an interest.

We sustain Williams's twelfth issue and dissolve the present injunction order's restraint with respect solely to Unit 610.

### N.    We overrule Williams's thirteenth issue that NE had an alternative remedy that obviated the need for injunctive relief.

In his thirteenth issue, Williams argues that the trial court abused its discretion by granting injunctive relief because NE had an alternative remedy that made injunctive relief unnecessary. Specifically, he argues that NE could have filed a notice

of lis pendens in Mexico to give notice of its claims in the condos and thus did not need injunctive relief. We reject this argument because nothing in our record establishes that a lis pendens procedure is available in Mexico.

"The lis pendens statute provides persons litigating title to property with a mechanism to give constructive notice to all those taking title to the property that the claimant is litigating a claim against the property." *Mangione v. Jaffe*, 61 S.W.3d 591, 592 (Tex. App.—San Antonio 2001, pet. dism'd). But by its very terms the lis pendens statute envisions the filing of a lis pendens notice in Texas for real property located in Texas. The statute provides that

> during the pendency of an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property, a party to the action who is seeking affirmative relief may file for record with *the county clerk of each county where a part of the property is located a notice that the action is pending.*

Tex. Prop. Code Ann. § 12.007(a) (emphasis added).

Williams offers no proof that a procedure similar to lis pendens exists in Mexico. Instead, he tries to remedy this failing by arguing that we must presume that such a procedure exists in Mexico. To perform this task, he relies on Texas Rule of Evidence 203; that rule does not create a presumption upon which Williams can rely. In part, Rule 203 provides that

> [*a*] *party who intends to raise an issue about a foreign country's law must*: (1) give reasonable notice by a pleading or other writing; and (2) at least 30 days before trial, supply all parties a copy of any written materials or sources the party intends to use to prove the foreign law.

Tex. R. Evid. 203(a) (emphasis added). The party carrying the burden to prove foreign law suffers under a presumption if they fail in that showing; "[i]f the party seeking the application of foreign law fails to provide the necessary information to the trial court, there is a presumption that the law of the foreign jurisdiction is identical to that of Texas." *Diamond Offshore Drilling, Inc. v. Black*, 652 S.W.3d 463, 472 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (first quoting *Cal Dive Offshore Contractors Inc. v. Bryant*, 478 S.W.3d 914, 921 (Tex. App.—Houston [14th Dist.] 2015, no pet.); and then quoting *PennWell Corp. v. Ken Assocs., Inc.*, 123 S.W.3d 756, 764 (Tex. App.— Houston [14th Dist.] 2003, pet. denied)).

Williams attempts to shoehorn himself into the presumption by arguing that "NE did not attempt to prove up the law of Mexico. Therefore, the [c]ourt must presume that Mexican law is the same as Texas law." But Williams is the one who relies on Mexican law, and thus he is the person who bore the burden to establish what that law is because he is the "party who intends to raise an issue about a foreign country's law." *See* Tex. R. Evid. 203. Why the presumption operating against the party with the burden to prove foreign law would apply to NE—a party who did not seek to apply foreign law—is unexplained. The record contains no proof that Mexico has a lis pendens procedure, and no presumption aids Williams to show that it does.

We overrule Williams's thirteenth issue.

40

**O.   We overrule Michael's sole issue because he waived an objection to the authenticity of the Amendment.**

Michael raises a single issue in his appeal. Michael filed a verified denial stating that he did not execute the Amendment, yet when it was offered into evidence, his counsel stated, "I have no objection." The trial court confirmed that there was no objection to the admission of the Amendment. There was a later objection and argument over whether Michael's signature was authentic.

Michael carries this argument forward on appeal by arguing that his verified denial of execution under Texas Rule of Civil Procedure 93(7) placed the burden on NE to prove his signature was authentic and that it failed to make that showing. But Michael fails to acknowledge his lack of objection to the admission of the Amendment and how this failure waived his challenge to the authenticity of the document. As the First Court of Appeals has held,

> [E]ven had [appellee] filed a verified denial contesting the signature on the Agreement, she would not prevail. [Appellee] did not object to [the records custodian's] declaration or seek a ruling from the trial court on her authenticity concerns. Her failure to secure such a ruling from the trial court failed to preserve the issue for our review. *See Branch Law Firm L.L.P.* [*v. Osborn*], 532 S.W.3d [1,] 15 [(Tex. App.—Houston [14th Dist.] 2016, pet. denied)] ("[Appellee] was required to obtain a ruling on his authentication objection to preserve his appellate challenge"); *Williams v. Bad-Dab, Inc.*, No. 01-11-00102-CV, 2012 WL 3776347, at *6 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, no pet.) (mem. op.) ("Objections to hearsay, improper authentication, or lack of foundation are defects in form, which require a ruling for appellate review."); *B. Gregg Price, P.C. v. Series 1 - Virage Master, LP*, No. 01-20-00474-CV, 2021 WL 3204753, at *8 (Tex. App.—Houston [1st Dist.] July 29, 2021 . . . ), (mem. op.) ("[A] defect in the form of the authentication of a document, i.e., a defect in an affidavit attempting to authenticate the attached

document, is waived in the absence of an objection and ruling in the trial court.") (citing *In re Longoria*, 470 S.W.3d 616, 630 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding))[, *overruled on other grounds*, 661 S.W.3d 419 (Tex. 2023)]; *Segal v. Bock*, No. 01-10-00445-CV, 2011 WL 6306623, at *5 (Tex. App.—Houston [1st Dist.] Dec. 15, 2011, no pet.) (mem. op.) (holding party who neither objected to document's authentication nor secured ruling from trial court on objection waived any complaints on appeal regarding settlement agreement's authenticity).

*Northpointe LTC*, 2022 WL 17835223, at *7 (footnotes omitted). Thus, for purposes of the temporary-injunction hearing, we hold that Michael waived his objection to the authenticity of the Amendment.

We overrule the sole issue in Michael's appeal.[3]

---

[3]Michael has filed a motion for rehearing challenging our holding that he waived any objection to the authenticity of his signature on the Amendment. As we note above, when the Amendment was tendered into evidence, Michael's counsel stated, "I have no objection" to its admission. The trial court confirmed that Michael's counsel had no objection.

Michael's basis for his motion for rehearing is not that we misstated the authority in our opinion but that the authority we cited was wrongly decided. We disagree that Michael was freed from the consequences of his counsel's decision not to object but will address each of his challenges in turn.

If we are reading his motion correctly, Michael argues that his failure to object may have waived an objection to the authenticity of the Amendment but waived no objection to his contention that his spouse had forged his signature on the Amendment. We are unpersuaded by Michael's parsing. Also, although he cites several cases, those cases do not support his distinction. Understandably so, a challenge to execution of a document is an attack on its authenticity. As the Tyler Court of Appeals has explained,

Rule of [C]ivil [P]rocedure 93(7) requires a sworn denial of the execution of a written instrument. Tex. R. Civ. P. 93(7). *A Rule 93(7) verified denial challenges the authenticity of the document and addresses the document's admissibility as an evidentiary issue. See Roth*[ *v. JPMorgan Chase Bank, N.A.*], 439 S.W.3d

[508,] 512–13 [(Tex. App.—El Paso 2014, no pet.)]. Absent a verified denial, the document is received into evidence as fully proved. *Boyd v. Diversified Fin. Sys.*, 1 S.W.3d 888, 891 (Tex. App.—Dallas 1999, no pet.).

*Lissiak v. SW Loan OO, L.P.*, 499 S.W.3d 481, 494 (Tex. App.—Tyler 2016, no pet.) (emphasis added); *Olanipekun v. Omokaro*, No. 01-13-00888-CV, 2014 WL 5410058, at *1 (Tex. App.—Houston [1st Dist.] Oct. 23, 2014, no pet.) (mem. op.) ("A Rule 93(7) verified denial challenges the authenticity of the document and addresses the document's admissibility as an evidentiary issue."). Thus, if Michael's failure to object waived his challenge to the Amendment's authenticity, then that included his challenge that his signature was not authentic.

Next, Michael seeks refuge in the contention that the statement from *Northpointe* that we cited in support of our holding is dictum. *See* 2022 WL 17835223, at *7. The essence of this contention is that *Northpointe* had already noted that the party had failed to file a verified denial under Texas Rule of Civil Procedure 93(7), and thus there was no need for an alternative holding—that even if such a denial had been filed, the failure to object would have waived the objection. But the fact that a court offers an alternative holding for its decision does not make that holding dicta. As Justice Boyd of the Texas Supreme Court has noted, "[W]e may at times *base* a decision on two or more alternative grounds, both of which support the result (and thus neither of which constitutes obiter dictum)[.]" *Worsdale v. City of Killeen*, 578 S.W.3d 57, 78 (Tex. 2019) (Boyd, J., concurring); *see also Reynolds-Penland Co. v. Hexter & Lobello*, 567 S.W.2d 237, 243 (Tex. App.—Dallas 1978, writ dism'd by agr.) (Guittard, C.J., dissenting) ("When our highest court gives two grounds for a decision, both of which are carefully developed and supported by authority, an intermediate court cannot justifiably disregard either of these grounds as obiter." (first citing *Stanolind Oil & Gas Co. v. Edgar*, 98 S.W.2d 222, 223 (Tex. App.—Austin 1936, writ dism'd); and then citing *Casparis v. Fidelity Union Cas. Co.*, 65 S.W.2d 404, 406 (Tex. App.—Austin 1933, writ ref'd)). Again, Michael offers no authority to support a contention that an alternative holding is dicta.

Finally, we turn to Michael's central argument that once he filed a verified denial, NE had the obligation to establish the authenticity of his signature—no matter his counsel's statement to the trial court that he had no objection to the document's admission. Michael argues that

> [a] signature is presumed to be genuine in the absence of a sworn denial, which removes the presumption. In the absence of such presumption, it is incumbent on the plaintiff to establish the authenticity of the disputed

signature. In the instant case, [Michael] filed his verified denial long before the First Amendment was entered into evidence. Moreover, as recognized by this [c]ourt, NE offered no evidence to establish that [Michael had] signed the First Amendment.

Notwithstanding the fact that the presumption of validity was negated by [Michael]'s Rule 93.7 verified denial, the [c]ourt's February 8 opinion suggests [that] the presumption was revived because [Michael] did not object to the authenticity of an admittedly authentic document, an additional requirement which constitutes a significant and unwarranted change to the application and effect of Rule 93.7.

In other words, when a document is tendered into evidence and counsel states that he has "no objection" to its admission—and in this case, the trial court then confirms that he has no objection—the trial court cannot take counsel at his word.

The premise of Michael's argument is unconvincing. To preserve error, Texas Rule of Appellate Procedure 33.1(a) requires a complaint that "state[s] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint." Tex. R. App. P. 33.1(a)(1)(A). Though in a criminal context, the following aptly sets out Rule 33.1(a)'s purpose and its allocation of responsibility for preserving error:

We require a specific objection in the trial court to inform the trial judge of the basis of the objection and give him or her the opportunity to rule on it and to give opposing counsel the opportunity to respond to the complaint. *Resendez*[ *v. State*], 306 S.W.3d [308,] 313 [(Tex. Crim. App. 2009)]. Although technical considerations or forms of words are not required to preserve an error for appeal, a party must be specific enough to "let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Id.* at 312–13. The parties, not the judge, are responsible for the correct application of evidentiary rules: to preserve a complaint for appeal, the complaining party must have done everything necessary to bring the relevant evidentiary rule and its precise and proper application to the trial court's attention. *Id.* at 313.

*Kuether v. State*, 523 S.W.3d 798, 806 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). Michael's arguments flip these principles on their head. The implication of his

## IV. Conclusion

Having sustained Williams's twelfth issue, we dissolve the restraints in the amended temporary-injunction order regarding the condominium identified as "Aquiles Serdan 195T, Unit 610, Puerto Vallarta, Jalisco, Mexico." Having overruled Williams's remaining issues and Michael's sole issue, we affirm the trial court's amended temporary-injunction order as modified.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: April 11, 2024

---

argument is that the trial court, the opposing party, and indeed this court have the duty to shepherd a lawyer and not take him at his word when he specifically states that he has "no objection" to the admission of a document. According to Michael's argument, counsel's representation must be ignored, and everyone must take notice of a defense buried in a pleading and then second-guess or confirm the representation by some means that is left unstated. Practitioners and courts are guided by Rule 33.1(a) and must utilize its requirements, not the newly devised procedure that Michael implores us to use.

Accordingly, we overrule Michael's motion for rehearing.